FEDERAL KEMPER LIFE ASSURANCE COMPANY, Plaintiff-Appellee, v. PAUL N. EICHWEDEL *et al.*, Defendants (Albert A. Andrin, Independent Successor Adm'r of the Estate of David B. Schultz, Jr., Deceased, Plaintiff-Appellant; Old Republic Surety Company, Defendant-Appellee).

First District (4th Division)    No. 1—92—4353

Opinion filed August 25, 1994.

Dennis M. Fleming, of Wahler, Pecyna & Fleming, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, William Lynch Schaller, and Karen Kies DeGrand, of counsel), for appellee Federal Kemper Life Assurance Company.

Richard Wisner, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and James A. Knox, Jr., of counsel), for appellee Old Republic Surety Company.

JUSTICE THEIS delivered the opinion of the court:

This case involves a murder-for-insurance scheme. While harboring the intent to secure the murder of his brother-in-law, David Schultz, Paul Eichwedel procured an insurance policy on Schultz's life worth $250,000 from Federal Kemper Life Assurance Company. Eight months later, Schultz was murdered and Eichwedel collected the insurance money. Eichwedel was subsequently implicated in the murder.

Simply put, the issue now is who, if anybody, is entitled to the life insurance proceeds. We conclude that the insurance policy was void from the inception and, therefore, Federal Kemper is entitled to the return of the $250,000 life insurance proceeds.

This matter has generated a procedurally complex case. In this

appeal, Albert Andrin, independent successor administrator of the estate of David Schultz, deceased, appeals the November 19, 1992, order entered by Judge Curry in *Federal Kemper Life Assurance Co. v. Eichwedel and Old Republic Surety Co.* and the July 27, 1992, order entered by Judge Jaffe in *Andrin v. Old Republic Surety Co.* In the first case, Federal Kemper alleged that the insurance policy it issued on the life of David Schultz was void from the inception. Judge Curry eventually entered judgment against Paul Eichwedel and granted Federal Kemper's motion for summary judgment against the heirs of David Schultz, Andrin and Old Republic, finding that there were no genuine issues of material fact in dispute, that Eichwedel had a preexisting intent to secure the murder of Schultz and that the policy was void from the inception. In the second case, Andrin alleged that the Schultz estate was entitled to the proceeds from the surety bond issued by Old Republic Surety Company. Judge Jaffe originally entered a decision for Andrin and against Old Republic Surety Company in the amount of $250,000. Later, Judge Jaffe vacated this judgment and consolidated this case with the first action.

Pursuant to Supreme Court Rule 23(a)(1) (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23(a)(1), eff. July 1, 1994), we now affirm the decisions of Judge Curry and Judge Jaffe.

## FACTS

It is important to establish the relationships existing between the parties making up our cast of characters. The deceased, David Schultz, was married to Cheryl Schultz and the couple had four children. Cheryl's brother is Paul Eichwedel.

In 1985, David Schultz and Paul Eichwedel visited Federal Kemper Life Assurance Company and applied for a life insurance policy on Schultz's life. The application for the policy designated Paul N. Eichwedel "as executor" as the sole beneficiary. The policy was also signed by Eichwedel as applicant and owner of the policy. Federal Kemper issued the policy in November 1985, in the amount of $250,000.

Federal Kemper's amended complaint alleges that on July 5, 1986, Schultz was found shot to death in his car in Chicago. An employee of Eichwedel identified an individual named Charlie Hill as the murderer. Therefore, initially, Eichwedel was not implicated in the murder. Because of Eichwedel's designation in the insurance policy "as executor" and because there was no will, Federal Kemper advised that it would "pay the proceeds only to the Court Appointed Administrator of the Estate of David Schultz, deceased." Eichwedel was subsequently appointed administrator of the estate.

Eichwedel posted a surety bond in the amount of $375,000, issued by Old Republic Surety Company. In checks dated November 7, 1986, and December 8, 1986, Federal Kemper then paid Eichwedel the $250,000 of life insurance proceeds plus interest.

On November 16, 1987, Eichwedel confessed that he had been plotting to take Schultz's life for months before he procured the Federal Kemper life insurance policy. Eichwedel was then indicted and convicted for murdering Schultz and for conspiracy to murder Schultz. This court later reversed the conviction and ordered a new trial, on the basis that the defendant's right to have counsel present during questioning was violated and the confession should have been suppressed. *People v. Eichwedel* (1993), 247 Ill. App. 3d 393, 617 N.E.2d 345.

## FEDERAL KEMPER LIFE ASSURANCE COMPANY v. EICHWEDEL AND OLD REPUBLIC SURETY COMPANY (THE CHANCERY SUIT FILED BEFORE JUDGE CURRY)

On April 14, 1988, Federal Kemper filed a complaint against Eichwedel in the chancery division of the circuit court of Cook County. Federal Kemper later amended the complaint to include Old Republic as a defendant. In this complaint, Federal Kemper alleged that it sought to "have the policy in question declared void from its inception" because Eichwedel fraudulently procured the policy, with the intention to murder Schultz.

Judge Curry ruled on this complaint on August 8, 1989. Judge Curry dismissed the count against Old Republic, ruling that Federal Kemper did not have standing to sue Old Republic. Federal Kemper appealed from the order dismissing the action against Old Republic. However, the circuit court retained jurisdiction over Federal Kemper's action against Eichwedel.

Cheryl Schultz, acting on behalf of herself and as mother and next friend of David's children, filed a petition to intervene in Federal Kemper's lawsuit against Eichwedel and Old Republic. At some point in the proceedings, counsel for the Schultz heirs drafted an order which provided, "Cheryl L. Schultz et al are granted leave to intervene ***." This order was entered by the chancery court on August 25, 1989.

Despite obtaining leave to intervene, the Schultz heirs did not file any pleadings in the case. Instead, their counsel appeared in probate court and secured the appointment of Albert A. Andrin as successor administrator of the Schultz estate. Andrin is the appellant in this case.

On September 27, 1990, this court reversed the decision regarding

Federal Kemper's standing to bring an action against Old Republic. (*Federal Kemper Life Assurance Co. v. Old Republic Surety Co.* (1990), 204 Ill. App. 3d 387, 561 N.E.2d 1208.) The case was remanded to the chancery court.

## ANDRIN v. OLD REPUBLIC SURETY COMPANY (THE LAW DIVISION ACTION FILED BEFORE JUDGE JAFFE)

On November 1, 1990, Andrin, as independent successor administrator of the estate, filed an action against Old Republic in the law division of the circuit court. Old Republic moved to consolidate the law division matter with the action already progressing in the chancery division. This motion was denied without prejudice.

On April 21, 1992, Judge Jaffe heard Old Republic's motion for reconsideration of the earlier denial to consolidate this case with the case already progressing in the chancery court. In opposing this motion, Andrin's counsel advised the court:

"If [Judge Curry] had allowed intervention [in the chancery suit] four years ago, we might not have been here, we might have been in front of him.

He denied it so we had to go out and file our own case ***.

* * *

The parties in front of Judge Curry do not include my clients. Neither the heirs nor Mr. Andrin have been brought in on any basis."

Old Republic's motion was denied.

The trial proceeded on the same day that the motion was denied. At the end of the trial, Judge Jaffe concluded that he had no choice but to find for Andrin. On April 28, 1992, Judge Jaffe entered a written order awarding Andrin $250,000 plus prejudgment interest.

### RESOLUTION OF BOTH ACTIONS

Therefore, the action pending in the law division was seemingly concluded in April 1992.

On May 12, 1992, Federal Kemper filed a motion for summary judgment of the suit pending before the chancery court. After hearing arguments, Judge Curry entered an order of default against Eichwedel. He also found the insurance policy void from the inception and granted Federal Kemper's motion for summary judgment against Old Republic, Andrin and the Schultz heirs. Judge Curry entered the final written order in this matter on November 19, 1992.

Meanwhile, on May 22, 1992, Old Republic filed a post-trial motion to vacate the judgment of the law division, asserting that Judge Jaffe's earlier order entering judgment in favor of Andrin was based

on a mistake of fact. The motion alleged that, contrary to statements made by counsel for the Schultz heirs, Judge Curry had already allowed the heirs leave to intervene in the chancery action. Therefore, Old Republic asked the court to vacate its judgment and consolidate the action with the matter pending before the chancery court.

Judge Jaffe's written order in this matter specifically states, "Had this Court known on April 20, 1992 [sic] that Judge Curry granted the heirs leave to intervene, it would have reconsidered *** [the] previous order denying consolidation of these proceedings ***." Therefore, Judge Jaffe vacated the judgment in favor of Andrin and consolidated the law division action with the action pending before Judge Curry in the chancery court.

Andrin appeals the decisions of both Judge Curry and Judge Jaffe.

Numerous issues are raised in this appeal by all the parties. These issues are: (1) whether this court has jurisdiction over Federal Kemper; (2) whether Judge Curry's decision to grant summary judgment in favor of Federal Kemper Life Assurance was error because the heirs were innocent beneficiaries; (3) whether Judge Curry's decision that the estate of Schultz had no claim on the Old Republic surety bond was error; (4) whether Judge Curry's decision that Federal Kemper was entitled to summary judgment against Old Republic, Andrin, Cheryl Schultz and her children was error because genuine issues of material fact still existed; (5) whether Judge Jaffe's decision to vacate the judgment in favor of Andrin and against Old Republic was error because the court lacked jurisdiction; and (6) whether Judge Jaffe's decision to grant Old Republic's post-trial motion to vacate the judgment was error. We consider each issue in turn.

## DISCUSSION

### JURISDICTION OVER FEDERAL KEMPER

Federal Kemper argues that this court lacks jurisdiction over it. Citing to the notice of appeal contained in the record, Federal Kemper states that it was never made a party to Andrin's appeal and that Andrin has not sought relief against Federal Kemper. Federal Kemper also argues that it was awarded relief against Old Republic and Andrin cannot overturn this judgment, even if he is successful in this appeal.

■ Andrin appeals Judge Curry's decision to grant summary judgment in favor of Federal Kemper and against Old Republic, An-

drin and the Schultz heirs. The dispute in this case centers around ownership of the life insurance proceeds and, therefore, entitlement to the Old Republic surety bond. As Old Republic noted, the proceeds of the surety bond should be awarded to either Andrin and the heirs or to Federal Kemper. On a motion for summary judgment, Judge Curry awarded these funds to Federal Kemper. It appears to us, therefore, that Federal Kemper's interests are intrinsically tied to our resolution of this appeal. We therefore conclude that we have jurisdiction over this matter. 134 Ill. 2d R. 366.

## JUDGE CURRY'S DECISION TO GRANT SUMMARY JUDGMENT IN FAVOR OF FEDERAL KEMPER

Andrin first argues that Judge Curry's decision to grant summary judgment in favor of Federal Kemper was error because it violates well-established law and public policy.

■ Generally, the fact that an insured is murdered is no bar to the recovery of life insurance proceeds by the heirs of the decedent. (See *Supreme Lodge Knights & Ladies of Honor v. Menkhausen* (1904), 209 Ill. 277, 70 N.E. 567; 4 Couch on Insurance 2d § 27:149 (M. Rhodes rev. 1984).) However, courts in other jurisdictions have noted an exception to this rule. The rule in our sister States is that, where it is the beneficiary's intention to murder the insured *at the time that the life insurance policy is issued* and then the beneficiary procures the policy with that intention in mind, the policy is void from the inception. (See, *e.g.*, *New York Mutual Life Insurance Co. v. Armstrong* (1886), 117 U.S. 591, 29 L. Ed. 997, 6 S. Ct. 877; *New England Mutual Life Insurance Co. v. Null* (8th Cir. 1979), 605 F.2d 421; *People v. Hardy* (1992), 2 Cal. 4th 86, 825 P.2d 781, 5 Cal. Rptr. 2d 796; *Chute v. Old American Insurance Co.* (1981), 6 Kan. App. 2d 412, 629 P.2d 734; *Colyer's Administrator v. New York Life Insurance Co.* (1945), 300 Ky. 189, 188 S.W.2d 313; *Columbian Mutual Life Insurance Co. v. Martin* (1940), 175 Tenn. 517, 136 S.W.2d 52.) Relying upon 4 Couch on Insurance 2d § 27:160 (M. Rhodes rev. 1984), *Hardy* explains the justification for this rule:

> "For reasons of public policy, courts have distinguished between cases involving fraud in obtaining a life insurance policy, and cases where the beneficiary decides to murder the insured after purchasing the insurance. As explained by one commentator, 'An exception to the rule that the liability of the insurer is not affected by the beneficiary's unlawfully killing the insured may arise when the beneficiary is also guilty of fraud with respect to the insurer. For example, *if it is established that the beneficiary conceived the idea of murdering the insured prior to the time the insurance was*

*procured* and with that thought in mind the beneficiary himself procured the policy \*\*\* the insurance company may defeat liability on the ground of fraud. Under this principle recovery is barred even by the estate of the insured." (Emphasis in original.) *Hardy*, 2 Cal. 4th at 141, 825 P.2d at 810, 5 Cal. Rptr. 2d at 825.

We agree that this should likewise be the rule in Illinois.

This conclusion follows from the fact that, in Illinois, a life insurance policy is void if the applicant of the policy makes misrepresentations with the intent to deceive or the misrepresentations made by the applicant materially affect the risk of the insured. (*Northern Life Insurance Co. v. Ippolito Real Estate Partnership* (1992), 234 Ill. App. 3d 792, 801, 601 N.E.2d 773, 779.) "A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk taken by the insurer." *Northern Life Insurance Co.*, 234 Ill. App. 3d at 801, 601 N.E.2d at 779.

The failure of a beneficiary to reveal his intention to murder the insured at the time at which he procures a life insurance policy would certainly be an untruth which would affect the risk assumed by the insurance company issuing a life insurance policy. Therefore, applying the definition set forth in *Northern Life Insurance Company*, if the beneficiary intends to murder the insured and then procures an insurance policy on the life of the insured, the beneficiary-applicant has made a misrepresentation to the insurance company. Consequently, the life insurance policy would then be void.

We therefore conclude that, where the beneficiary procures a life insurance policy on the life of the insured while harboring the intent to murder the insured, the life insurance policy was obtained through fraudulent means and the policy is void from the inception. We now apply this rule to the facts at hand.

■ First, there is no question that, together, Schultz and Eichwedel met with a life insurance agent to procure a life insurance policy. Eichwedel signed the policy "as applicant or owner." Additionally, Eichwedel "as executor" was the sole beneficiary designated in this policy. This is all evident from the life insurance policy which is included in the record. Having established that Eichwedel, the beneficiary "as executor," procured the life insurance policy, we must next determine if he did so while harboring an intention to murder Schultz.

On November 16, 1987, while being questioned by an assistant State's Attorney, Eichwedel admitted that he had been plotting to murder Schultz before the Federal Kemper life insurance policy was procured. Eichwedel was subsequently convicted of murdering Schultz and conspiring to murder Schultz. However, this court re-

versed the conviction, suppressing the confession because the defendant's right to have counsel present was violated, and remanding the case for a new trial. *People v. Eichwedel* (1993), 247 Ill. App. 3d 393, 617 N.E.2d 345.

We believe that, although the confession was suppressed in the criminal proceeding, this court may consider the confession in this related civil case. We find no case recently decided in Illinois which addresses this issue. However, several of our sister States have concluded that a statement obtained in violation of *Miranda* rights is not automatically excluded in civil proceedings. See, *e.g., County of Henrico v. Ehlers* (1989), 237 Va. 594, 379 S.E.2d 457 (by its own terms, fifth amendment is not applicable in civil proceedings and, because there could not therefore be a fifth amendment violation, the protection afforded by *Miranda* was never called into play); *Levan v. Commonwealth, Pennsylvania Game Comm'n* (1981), 59 Pa. Commw. 348, 429 A.2d 1241 (even if Levan was unfairly influenced to sign field receipts, the defect was only applicable to finding of guilt in criminal proceeding and could not subsequently be attacked in civil action to revoke hunting license); *Knight v. Michigan* (1980), 99 Mich. App. 226, 297 N.W.2d 889 (statements obtained in violation of *Miranda* are not automatically excluded in civil proceeding but where the defendant was mentally retarded, highly suggestible and easily intimidated by police, trial court properly exercised discretion to exclude the evidence); *Terpstra v. Niagara Fire Insurance Co.* (1970), 26 N.Y.2d 70, 256 N.E.2d 536, 308 N.Y.S.2d 378 (insured's arson confession is admissible in civil action involving fire insurance claim even though the confession had been excluded in criminal prosecution). See generally Annot., 43 A.L.R.3d 1375 (1972); 3 J. Wigmore, Evidence § 815 (Chadbourn rev. ed. 1970). But see *Romanelli v. Commissioner of Internal Revenue* (7th Cir. 1972), 466 F.2d 872.

Because we have concluded that we will consider the confession, we can determine that Eichwedel did possess a preexisting intention to murder Schultz at the time at which he procured the policy. Because there was a preexisting intention to murder Schultz at the time at which the policy was procured, the Federal Kemper policy is void from the inception and it was proper for Judge Curry to grant Federal Kemper's motion for summary judgment against all the parties. "Summary judgment is appropriate only when the pleadings, depositions, affidavits, and admissions on file present no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Northern Life Insurance Co. v. Ippolito Real Estate Partnership* (1992), 234 Ill. App. 3d 792, 801, 601 N.E.2d 773, 779.

Andrin argues that this matter should be controlled by *Supreme*

*Lodge Knights & Ladies of Honor v. Menkhausen* (1904), 209 Ill. 277, 70 N.E. 567. Our reading of this case, however, convinces us that it stands solely for the proposition that an insurance society's obligation to pay life insurance proceeds is not destroyed simply because the insured is murdered. There is no discussion of what consequences ensue if the policy is procured with the intention to murder the insured.

■ Andrin raises two additional issues concerning Judge Curry's decision to grant summary judgment. Andrin contends that it was error for Judge Curry to (1) find that the Schultz estate had no claim on the Old Republic surety bond and (2) grant a motion for summary judgment when issues of material fact remained. We have already concluded that the policy was void from the inception and Federal Kemper is therefore entitled to the proceeds of the Old Republic surety bond. Because the policy was void from the inception, the life insurance proceeds never became part of the Schultz estate and the heirs cannot have a claim on the surety bond which secured those proceeds. Therefore, no issues of material fact remain.

We therefore affirm the decision of Judge Curry and conclude that summary judgment in favor of Federal Kemper was properly granted.

### JUDGE JAFFE'S DECISION TO VACATE THE JUDGMENT AWARDING ANDRIN THE LIFE INSURANCE PROCEEDS

Despite the fact that the heirs were granted leave to intervene in the matter proceeding in the chancery division, Andrin filed a separate action to recover the $250,000 proceeds of the life insurance policy in the law division before Judge Jaffe. After a bench trial, Judge Jaffe awarded Andrin $250,000 plus prejudgment interest. However, after a hearing, Judge Jaffe granted Old Republic's motion to vacate the judgment.

Andrin asserts that the court's decision to vacate the judgment was error and asks this court to reverse Judge Jaffe's decision. The first error which Andrin attempts to assign to this decision is that Old Republic's motion to vacate was filed more than 30 days after the court's order was filed.

Section 2—1203 of the Illinois Code of Civil Procedure governs motions made after judgment in nonjury cases. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1203.) This provision states that, after a trial held without a jury, any party may file a motion to vacate a judgment within 30 days after the entry of a judgment.

■ The trial on Andrin's complaint was held on April 21, 1992. On that date, Judge Jaffe orally indicated that he would award the

insurance money to Andrin. A written order to that effect was filed on April 28, 1992. Old Republic's post-trial motion was filed on May 22, 1992. Old Republic argues that the 30-day period for a post-trial motion runs from the time at which a written order is filed and not from the time that an oral pronouncement is made.

Supreme Court Rule 272 states:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed." 134 Ill. 2d R. 272.

The transcript of the hearing indicates that the parties all contemplated that a written order would be required. Moreover, a written order was submitted to the judge and signed without an objection being raised. This order states:

> "That this court's judgment *of April 28, 1992* in favor of Plaintiff is vacated, set aside and held for naught." (Emphasis added.)

We conclude, then, that the judgment became final on April 28, 1992. Measuring the 30-day filing period from this date, it is clear that Old Republic's motion to vacate was filed within the statutory time limitation.

The final issue which Andrin raises is whether the court's decision to vacate its judgment and consolidate the law division action with the matter pending in the chancery court was error.

■ As noted above, Old Republic filed a motion to vacate Judge Jaffe's decision and to consolidate the law division action with the action pending before the chancery court. This motion stated:

> "Contrary to statements made by ANDRIN's counsel, Judge Curry already allowed the heirs to David B. Schultz to intervene in the *Federal Kemper* suit. Since this Court felt obligated to defer to what it believed to be Judge Curry's decision not to permit intervention, it should vacate the April 28, 1992 judgment and order these proceedings consolidated with the *Federal Kemper* suit."

After a hearing on this motion, Judge Jaffe vacated the judgment which he had previously entered in favor of Andrin and against Old Republic. On a motion filed pursuant to section 2—1203, a motion to vacate judgment is addressed to the trial court's discretion and its purpose is to alert the court to errors it has committed and to afford the court an opportunity to correct those errors. (*In re Marriage of Sarron* (1993), 247 Ill. App. 3d 819, 823, 617 N.E.2d 1247, 1250.) "Whether a trial court has abused its discretion turns on whether the court's refusal to vacate 'violates the moving party's right to fundamental justice and manifests an improper application of

discretion.'" *Mryszuk v. Hoyos* (1992), 228 Ill. App. 3d 860, 863, 593 N.E.2d 900, 902, quoting *Harris v. Harris* (1977), 45 Ill. App. 3d 820, 821, 360 N.E.2d 113.

Judge Jaffe made clear that he was vacating the judgment in favor of Andrin because it was based upon a mistaken impression of the true state of the nature of the case. Judge Jaffe properly vacated the judgment and consolidated the cases.

## CONCLUSION

Although there are procedural complexities involved in this case, resolution of this matter is actually quite simple. Federal Kemper's policy was void from the inception. Federal Kemper is entitled to the return of its proceeds. Once this basic proposition is established and accepted, it is clear that the heirs cannot recover on this policy.

Consequently, Judge Curry was correct in granting summary judgment in favor of Federal Kemper and against Old Republic, Andrin and the Schultz heirs. Old Republic's motion to vacate the judgment was properly before Judge Jaffe and he was correct in vacating the judgment and consolidating the cases. We therefore affirm the decisions of the chancery court and the law division.

Affirmed.

JOHNSON and CAHILL, JJ., concur.