No. 104657

IN THE

SUPREME COURT OF ILLINOIS

_____

| | |
|---|---|
| PHILIP MORRIS USA, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Motion for writ of mandamus/ |
| | ) prohibition |
| HON. NICHOLAS G. BYRON, Judge of the | ) |
| Third Judicial Circuit, et al., etc., | ) |
| | ) |
| Respondents. | ) |

_____

O R D E R

This cause coming to be heard on the motion of the petitioner, Philip Morris USA, Inc., an objection having been filed by the respondents Sharon Price, et al., a reply having been filed by the petitioner, and the court being fully advised in the premises;

IT IS ORDERED that the motion for leave to file a petition for writ of *mandamus* or prohibition is <u>denied</u>. The motion for supervisory order is <u>allowed</u>. In the exercise of this court's supervisory authority, the circuit court of Madison County is directed to vacate its order of May 9, 2007, certifying questions for interlocutory appeal pursuant to Supreme Court Rule 308 in *Price et al. v. Philip Morris USA Inc.*, No. 00 L 112, and to enter an order dismissing plaintiffs' motion to vacate or withhold final judgment pursuant to section 2–1203 of the Code of Civil Procedure (735 ILCS 5/2–1203 (West 2006)).


Order entered by the Court.


CHIEF JUSTICE THOMAS took no part.


JUSTICE FREEMAN, dissenting:

This court allows the motion of Philip Morris USA, Inc., for a supervisory order (188 Ill. 2d R. 383). In the exercise of our supervisory authority, this court directs the circuit court of Madison County to vacate its certification of questions for interlocutory appeal to the appellate court pursuant to Supreme Court Rule 308 in *Price v. Philip Morris USA, Inc.*, No. 00 L 112, and to enter an order dismissing plaintiff's postjudgment motion pursuant to section 2–1203 of the Code of Civil Procedure (735 ILCS 5/2–1203 (West 2006)). I respectfully dissent.

## I. BACKGROUND

The supervisory order in this case is the capstone of a highly publicized class action, which resulted in a multibillion dollar judgment in favor of plaintiffs. Some background is in order to appreciate the significance–and predictability–of this court's unusual action.

### A. Underlying Action

Plaintiffs brought a class action against Philip Morris USA, Inc. (PMUSA), alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1998)) and the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (815 ILCS 510/1 *et seq.* (West 1998)). Plaintiffs brought the action on behalf of a class of Illinois residents who had purchased "Light" cigarettes in Illinois since the introduction of Marlboro Lights in 1971. Plaintiffs claimed that the word "lights" and the phrase "lowered tar and nicotine" were deceptive in that those words led each consumer to believe that he or she would receive lower tar and nicotine from these cigarettes and that, as a result, smoking them would be less hazardous than smoking regular, full-flavored cigarettes. Plaintiffs alleged that all class members purchased Lights because of a belief that those cigarettes were less hazardous and provided health benefits not associated with regular, full-flavored cigarettes, and that no class member would have purchased Lights "but for" PMUSA's unfair or deceptive acts or practices. The circuit court certified the class.

PMUSA asserted as an affirmative defense section 10b(1) of the Consumer Fraud Act, which exempts conduct "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1998). In pretrial proceedings and at trial, it was PMUSA's position, established through testimony and exhibits, that its use of the terms "lights" and "lowered tar and nicotine" complied with Federal Trade Commission (FTC) policies. Plaintiffs presented evidence that the FTC did not have an official policy that permitted cigarette companies to use these terms.

The parties did not dispute that there is no industrywide formal rulemaking authorizing the use of the disputed descriptors at issue in this case. Further, the FTC does not have any industrywide formal rule that authorizes or requires cigarette manufacturers to use the terms "light" or "low tar" or any variation thereof. Moreover, the FTC views what it considers to be a "regulatory" scheme in this area as a "voluntary approach."

Dr. John Peterman, PMUSA's expert witness, testified, *inter alia*, that a 1971 agreement between the FTC and a cigarette company, memorialized in a consent order, *In re American Brands, Inc.*, 79 F.T.C. 225 (1971), was "an official act of the FTC," the terms of which provided "industry guidance to [PMUSA] and others regarding the use of descriptors." Likewise, according to Peterman, in a 1995 consent order, *In re American Tobacco Co.*, 119 F.T.C. 3 (1995), the FTC intended to provide industrywide guidance with respect to the use of descriptors.

At the close of the trial, the circuit court denied PMUSA's affirmative defense based on section 10b(1) of the Consumer Fraud Act. Specifically finding Dr. Peterman's testimony to be unpersuasive, the circuit court ruled that the descriptors "lights" and "lowered tar and nicotine" were false and misleading, and that the use of those descriptors has never been specifically authorized by law. The court ruled that PMUSA "voluntarily chose to use these terms on its packages of Marlboro Lights and Cambridge Lights. No regulatory body has ever required (or even specifically approved) the use of these terms by Philip Morris. The court finds that Philip Morris has not established that its conduct

is 'specifically authorized' by law." The circuit court found in favor of plaintiffs and awarded them damages totaling $10.1 billion.

This court took the appeal directly from the circuit court pursuant to Supreme Court Rule 302(b) (134 Ill. 2d R. 302(b)). This court concluded that "the FTC's informal regulatory activity, including the use of consent orders, comes within the scope of section 10b(1)'s requirement that the specific authorization be made 'by laws administered by' a state or federal regulatory body." *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 258 (2005) (plurality op.). According to the plurality opinion, through the 1971 and 1995 consent orders, "the FTC could, and did, specifically authorize all United States tobacco companies to utilize the words 'low,' 'lower,' 'reduced' or like qualifying terms, such as 'light,' so long as the descriptive terms are accompanied by a clear and conspicuous disclosure of the 'tar' and nicotine content in milligrams of the smoke produced by the advertised cigarette." *Price*, 219 Ill. 2d at 265 (plurality op.). In the course of reaching this conclusion, the plurality "note[d] with great interest" *Watson v. Philip Morris Cos.*, No. 4:03–CV–519 GTE (E.D. Ark., December 12, 2003), *aff'd*, 420 F.3d 852 (8th Cir. 2005). After discussing the case, the plurality concluded that "the federal district court's detailed analysis does support our conclusion that specific authorization for the use of the disputed descriptors may be found in consent orders rather than in formally promulgated trade regulation rules of the FTC." *Price*, 219 Ill. 2d at 265 (plurality op.). This court reversed the judgment and remanded the cause to the circuit court with instructions to dismiss the action. *Price*, 219 Ill. 2d at 274 (plurality op.).

Dissenting, two justices of this court opined that the FTC's regulatory activity did not rise to the level of "specific authorization" for PMUSA to use the disputed descriptors in marketing Marlboro Lights and Cambridge Lights. *Price*, 219 Ill. 2d at 299 (Freeman, J., dissenting, joined by Kilbride, J.). The dissenters specifically disagreed with the plurality's treatment of the *Watson* case. *Price*, 219 Ill. 2d at 309-13 (Freeman, J., dissenting, joined by Kilbride, J.).

Plaintiffs filed a petition for rehearing, which was denied by a divided court (see *Price*, 219 Ill. 2d at 337 (Freeman, J., dissenting upon denial of rehearing, joined by Kilbride, J.)). On November 27, 2006, the United States Supreme Court denied plaintiffs' petition for a writ of *certiorari*. *Price v. Philip Morris, Inc.*, __ U.S. __, 166 L. Ed. 2d 517, 127 S. Ct. 685 (2006). On December 5, 2006, this court issued its mandate to the circuit court. On December 18, 2006, the circuit court complied with the instruction of this court and entered an order dismissing the action with prejudice.


B. Postjudgment Motion

On January 17, 2007, plaintiffs filed a postjudgment motion pursuant to section 2–1203 of the Code of Civil Procedure (735 ILCS 5/2–1203 (West 2006)). The motion noted that on January 12, 2007, the United States Supreme Court had granted *certiorari* to review *Watson v. Philip Morris Co.*, the case which the *Price* plurality "note[d] with great interest." *Price*, 219 Ill. 2d at 263 (plurality op.). The section 2–1203 motion further noted that the federal government filed an *amicus curiae* brief in support of the *certiorari* petition. In its brief, the federal government explained that "the FTC has neither requested nor required tobacco companies to describe or advertise its cigarettes using ['light' or 'low tar'] or any other descriptors." Brief of United States as *Amicus Curiae* in Support of Petition for Writ of *Certiorari* in *Watson v. Philip Morris Co.*, No. 05-1284 (U.S. filed Dec. 15, 2006).

Further, the record shows that the federal government filed an *amicus curiae* brief on the merits in *Watson*, in which the federal government again declared: "The FTC has never promulgated official regulatory definitions of terms such as 'light' or 'low tar.' " Indeed, continued the federal

government: "Far from issuing detailed and specific regulations that govern respondent's marketing of light cigarettes, the FTC has not issued any such regulations at all." Brief of United States as *Amicus Curiae* Supporting Petitioners in *Watson v. Philip Morris Co.*, No. 05-1284 (U.S. filed February 26, 2007).

On May 2, 2007, the circuit court held a hearing on plaintiffs' section 2–1203 postjudgment motion. The court stated that it would not take any action to disturb the judgment, but would certify the question of whether it had jurisdiction to consider the merits of the motion. On May 9, 2007, the circuit court certified the following questions for interlocutory appeal pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308):

> "(1) May a circuit court vacate or set aside a judgment, which the Illinois Supreme Court directed the court to enter, within 30 days of its entry based on the discovery of new evidence which was unavailable before the judgment was entered if the newly discovered evidence discloses an error of fact upon which the judgment was based?
>
> (2) May a circuit court vacate or set aside a judgment which the Illinois Supreme Court directed the court to enter, if a subsequent United States Supreme Court decision makes plain that the basis for the judgment was erroneous?
>
> (3) May a circuit court hear and rule on a motion to return to a party documents filed under seal with the circuit court pursuant to a protective order after the court has entered judgment as directed by the Illinois Supreme Court?"

The record further shows that on June 11, 2007, the United States Supreme Court handed down *Watson v. Philip Morris Cos.*, 551 U.S. ___, 168 L. Ed. 2d 42, 127 S. Ct. 2301 (2007), reversing the decisions of the lower courts, which the plurality opinion in *Price* discussed with approval. *Price*, 219 Ill. 2d at 263-65 (plurality op.). On May 17, 2007, Philip Morris filed its motion for a supervisory order.

## II. ANALYSIS

The case law of this court clearly establishes that, beyond our leave to appeal docket, the use of supervisory orders is disfavored. See *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 513 (2001) (and cases therein). Generally, this court will not issue a supervisory order absent a finding that (i) the normal appellate process will not afford adequate relief, (ii) the dispute involves a matter important to the administration of justice, or (iii) our intervention is necessary in order to prevent an inferior tribunal from acting beyond the scope of its authority. See *Bakalis*, 196 Ill. 2d at 513. None of these circumstances are present in this case.

As an initial matter, the use of a supervisory order in this case is unnecessary because the circuit court has not acted beyond the scope of its authority. The circuit court had jurisdiction over the parties because our mandate in *Price* reinvested the court with jurisdiction. *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 304-05 (1981) (collecting cases). Pursuant to that mandate, the circuit court, in fact, entered the judgment as directed by this court. Thus, the circuit court has complied with this court's mandate. What this application for supervisory authority turns on is what happened after the court complied with the mandate.

Subsequent to the circuit court's entry of judgment in compliance with this court's mandate, plaintiffs filed a motion for postjudgment relief pursuant to section 2–1203 of the Code of Civil Procedure (735 ILCS 5/2–1203 (West 2006)). Section 2–1203 provides as follows:

> "Motions after judgment in non-jury cases. (a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.
>
> (b) A motion filed in apt time stays enforcement of the judgment." 735 ILCS 5/2–1203 (West 2006).

One purpose of a section 2–1203 postjudgment motion is to alert the circuit court to errors it has made and to afford an opportunity for their correction. See *In re Marriage of King*, 336 Ill. App. 3d 83, 87 (2002); *Federal Kemper Life Assurance Co. v. Eichwedel*, 266 Ill. App. 3d 88, 98-99 (1994); *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 967 (1992). Another recognized purpose of a section 2–1203 motion is to bring to the court's attention newly discovered evidence which was not available at the time of trial, changes in the law, or errors in the court's previous application of existing law. See *Korogluyan v. Chicago Title & Trust Co.*, 213 Ill. App. 3d 622, 627 (1991); *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987 (1987). Information cognizable under a section 2–1203 motion includes actions taken by other courts. See, *e.g.*, *Federal Kemper Life*, 266 Ill. App. 3d at 98-99 (affirming circuit court's grant of section 2–1203 motion to vacate judgment and consolidate action with another case based on being informed of other judge's rulings). The motion is addressed to the circuit court's sound discretion. Whether a trial court has abused its discretion turns on whether the court's refusal to vacate violates the moving party's right to fundamental justice and manifests an improper application of discretion. See *In re Marriage of King*, 336 Ill. App. 3d at 87 (and cases cited therein); *Federal Kemper Life*, 266 Ill. App. 3d at 98-99 (and cases cited therein). Relevant here, section 2–1203 makes no distinction between those judgments entered before an appeal and those entered after an appeal.

Rather than rule on the motion, the circuit court questioned its jurisdiction to consider the motion. Such an action accords with the notion that a court is obligated to consider its jurisdiction. See *Trent v. Winningham*, 172 Ill. 2d 420, 424-25 (1996); *Eastern v. Canty*, 75 Ill. 2d 566, 570 (1979) (explaining the courts have a duty to examine their jurisdiction even if not raised by the parties). The circuit court stated that it would not disturb the judgment entered pursuant to this court's mandate but, instead, would certify the question of its jurisdiction to entertain the postjudgment motion.

Supreme Court Rule 308 governs certified questions. Merely because a circuit court certifies a question of law to the appellate court does not mean that the reviewing court must consider it. Whether the appeal proceeds is *discretionary* with the appellate court. In my view, the appellate court is quite capable of exercising its discretion pursuant to our Rule 308 (155 Ill. 2d R. 308, Committee Comments, at xcvii (noting that "[t]he appellate courts themselves can insure that this authority to allow interlocutory appeals is not abused")). As such, the normal appellate process is adequate to address the question raised in this motion and thus use of a supervisory order is unwarranted. It has been the longstanding policy of this court that "applications to this court for original actions of *mandamus* and prohibition or for supervisory orders should not be allowed as a way of circumventing the normal appellate process." *Moore v. Strayhorn*, 114 Ill. 2d 538, 540 (1986).

This matter will have no impact on the procedural administration of the courts. Rather, as I have shown, this is a routine, discretionary appeal. In light of the circumstances of the case and the circuit court's actions so far, I do not believe that the question presented here can be characterized as being of such importance to the administration of justice that it necessitates this court's exercise of supervisory authority.

The court's action today is entirely predictable because it quickly and quietly closes the book on a case that a majority of this court, I am sure, would rather forget. Had the court taken steps on rehearing to learn more about the various FTC actions that exist and thus render a more informed opinion, as I suggested at the time (*Price*, 219 Ill. 2d at 342-52 (Freeman, J., dissenting upon denial of rehearing, joined by Kilbride, J.)), we would not be in the situation that we are in today. I warned, in my dissent on denial of rehearing, that the court's suspect analysis with respect to the doctrine of primary jurisdiction would prove embarrassing over time. *Price*, 219 Ill. 2d at 342-52 (Freeman, J., dissenting upon denial of rehearing, joined by Kilbride, J.). And indeed, time has not been kind to the plurality's conclusion that the FTC had "specifically authorize[d]" PMUSA's use of the terms "lights" and "lower tar." *Price*, 219 Ill. 2d at 265 (plurality op.). The first shot across the bow was fired on December 16, 2006, when the federal government filed its *amicus* brief in support of *certiorari* in the United States Supreme Court in the *Watson* case. Then, several months later in the same case, on February 26, 2007, the federal government, in its *amicus* brief, told the Supreme Court that "(1) the FTC has *never required* tobacco companies to use the Cambridge Method to determine tar levels or to report the results of those tests in advertising; (2) the FTC has *never adopted* any official regulatory definitions of the terms 'light,' or 'low tar'; and (3) the FTC has *neither requested nor required* tobacco companies to describe or advertise their cigarettes using those or any other such descriptors." (Emphases added.) Next, on June 11, 2007, the United States Supreme Court unanimously reversed the decisions of the lower courts in *Watson*, upon which the plurality found support for its conclusions. *Price*, 219 Ill. 2d at 263-65. And just a few weeks ago, the United States Senate Health, Education, Labor and Pension Committee approved a bill which would "*for the first time* allow federal regulation of cigarettes."(Emphasis added.) M. Jalonick, *Senate Committee Approves Tobacco Regulation*, Chicago Daily Law Bulletin, August 1, 2007, at 1. Given this turn of events, it is hardly surprising to see the court grant supervisory relief despite Philip Morris' utter failure to satisfy the criteria for this extraordinary remedy.

For the foregoing reasons, I respectfully dissent from the issuance of a supervisory order.


JUSTICE KILBRIDE joins in this dissent.