THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHNATHAN D. CROTTY, Defendant-Appellee.

Second District    No. 2—07—0194

Opinion filed September 10, 2009.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

William G. Worobec, of Law Office of William G. Worobec, P.C., of Wheaton, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Johnathan D. Crotty, was charged with unlawful delivery of a controlled substance in violation of section 401(c)(2) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(c)(2) (West 2006)). On November 30, 2006, the trial court granted defendant's motion to suppress evidence. The State moved for reconsideration, and the trial court denied that motion on January 12, 2007. The State filed a certificate of impairment and timely appealed the trial court's order, pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).[1] We reverse and remand.

---

[1] We note that this court held in *People v. Marker*, 382 Ill. App. 3d 464, 477 (2008), that a motion by the State to reconsider an interlocutory order suppressing evidence would not toll the time for filing an appeal under Supreme

On June 20, 2006, defendant was charged by complaint with one count of unlawful delivery of a controlled substance (720 ILCS 570/ 401(c)(2) (West 2006)) for delivering more than 1 gram but less than 15 grams of cocaine on May 5, 2006, in Naperville. On August 28, 2006, defendant moved to suppress evidence, alleging that Naperville police detectives improperly interrogated him after he invoked his right to counsel.

The trial court heard defendant's motion on November 30, 2006. Detective Richard Arsenault of the Naperville police department testified for the State. On May 5, 2006, around 4 p.m., Detective Arsenault was at the Naperville police department jail, where he had two people in custody as a result of a drug investigation. He and another detective met with defendant in an interview room in the jail. Detective Arsenault read defendant his *Miranda* rights from a preprinted form and had defendant initial next to each right if he understood it. Detective Arsenault then asked defendant to read a waiver and to sign it if he wanted to speak with the detectives. Defendant signed the waiver and initialed each right on the form. Defendant denied any involvement in the crime that Detective Arsenault was investigating. Detective Arsenault asked to look at defendant's cellular phone and defendant consented. Detective Arsenault located a phone number that he recognized on the phone, and he confronted defendant with it. Defendant said that he did not know how the number had gotten into his phone and that possibly the codefendant had stored the number in his phone. Defendant then asked to speak with an attorney before any further questioning.

After defendant requested an attorney, Detective Arsenault terminated the interview and returned defendant to his cell. Detective Arsenault went to his office, which was at the other end of the building. Detective Arsenault discussed with other members of his narcotics unit whether any search warrants would be executed in relation to defendant's case. None of the officers involved were near defendant's cell after he invoked his right to counsel. Approximately 1¹/₂ hours after the termination of the interview, Detective Arsenault was summoned to the jail because defendant was asking to speak with somebody. At approximately 5:40 p.m., Detective Arsenault proceeded to the jail, and defendant asked him what was happening at that

Court Rules 604(a)(1) and 606(b) (210 Ill. 2d R. 606(b)). On May 21, 2008, on our own motion, we held this case in abeyance pending the supreme court's review of *Marker*. The supreme court has since reversed the holding in *Marker*. See *People v. Marker*, 233 Ill. 2d 158 (2009). Accordingly, jurisdiction is proper in this case.

point. Defendant asked what the process that he would be going through consisted of. Detective Arsenault told defendant that at that point, an assistant State's Attorney would be contacted and would review the facts of the case. He further told defendant that if he were charged, he would be transported to the Du Page County jail and in the morning he would have to appear in front of a bond court judge. He told defendant that the bond court judge would set a bond for him. Defendant then told Detective Arsenault that he wanted to talk again. Detective Arsenault advised defendant that he previously stated that he wanted an attorney and that he would not speak with him. Defendant responded that he wanted to talk to Detective Arsenault again. At that point, Detective Arsenault contacted Detective Kammerer and asked him to return to the jail because defendant wanted to speak to them.

When Detective Kammerer returned to the jail, the detectives presented defendant with a new *Miranda* waiver form and again advised him of his *Miranda* rights. They asked defendant to initial the *Miranda* form if he understood the rights and to sign the waiver if he chose to do so. Defendant initialed the second *Miranda* form and signed the second waiver. The detectives then interviewed defendant for the second time and defendant gave a statement. Detective Arsenault denied that any of his interactions with defendant involved threatening language, promises, or yelling. On cross-examination, Detective Arsenault stated that he was not certain that he informed defendant when he would appear in front of a bond court judge if he were charged. However, Detective Arsenault stated that, if he did, he would have told defendant that it would take place sometime in the morning. When defendant said that he wanted to speak to him again, Detective Arsenault believed that he wanted to talk about the investigation and not about the process and that this was the reason Detective Arsenault called Detective Kammerer and re-Mirandized defendant.

On redirect, Detective Arsenault denied giving defendant any information related to the strength of his case, the evidence that was being gathered, or the status of any search warrants. He also did not provide any information regarding any statements that the codefendant made.

After hearing the testimony and the parties' arguments, the trial court stated that it found *People v. Flores*, 315 Ill. App. 3d 387 (2000), controlling, although it disagreed with the holding of that case. The trial court also noted that defendant was being held in the jail where a jailer would be available to answer routine questions, yet Detective Arsenault was specifically called to speak with defendant. Defendant

asked Detective Arsenault about what was going to happen and he was not then re-Mirandized. In light of the facts and circumstances and the relevant case law, the trial court granted defendant's motion to suppress.

On December 26, 2006, the State moved for reconsideration and argued that Detective Arsenault did not interrogate defendant when he answered his question. On January 12, 2007, the trial court heard the motion for reconsideration and denied it. On appeal, the State argues that this court should not follow *Flores*, because it was an "aberration on the legal landscape" of the body of law surrounding *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The State argues that two factors must be considered as to whether defendant's rights were violated where he gave a statement after having asserted his right to counsel and new *Miranda* warnings did not precede the inculpatory statements: (1) whether defendant initiated the renewed contact with the police, and (2) if police did not re-Mirandize defendant, whether the exchange constituted an interrogation such that the police knew or should have known that their statements or questions were likely to elicit an incriminating response. The State asserts that it was undisputed that defendant in this case renewed contact with Detective Arsenault, and that the dispute concerns whether the exchange was an interrogation or its functional equivalent. The State argues that defendant's question about what was going to happen next and Detective Arsenault's response did not constitute an interrogation or its functional equivalent. Thus, the State argues that defendant's subsequent statement should not have been suppressed.

When reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. We review the trial court's findings of historical fact and reverse those findings only if they are against the manifest weight of the evidence, and we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). Here, there are no disputed facts, so we review *de novo* only the trial court's ultimate legal conclusion that suppression was warranted.

A criminal defendant has a constitutional right to counsel at all custodial interrogations, as provided by both the United States and the Illinois Constitutions. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §10; *Flores*, 315 Ill. App. 3d at 392. Once a defendant invokes that right, the police cannot interrogate him further unless the defendant initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885 (1981). Even where the

defendant has reinitiated contact, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the right to have counsel present. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 77 L. Ed. 2d 405, 411, 103 S. Ct. 2830, 2834 (1983). The *Edwards* Court explained that, frequently during a conversation initiated by the accused, "the officers will say or do something that clearly would be 'interrogation.' " *Edwards*, 451 U.S. at 486 n.9, 68 L. Ed. 2d at 387 n.9, 101 S. Ct. at 1885 n.9. In such a case, the question is whether the accused knowingly and intelligently waived the right to counsel, and in considering this question, the court considers the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with authorities. *Edwards*, 451 U.S. at 486 n.9, 68 L. Ed. 2d at 387 n.9, 101 S. Ct. at 1885 n.9.

The *Edwards* rule is designed to prevent the police from badgering a defendant into waiving his previous assertion of his right to counsel. *People v. Woolley*, 178 Ill. 2d 175, 198 (1997). Thus, if the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are inadmissible as substantive evidence at trial. *Woolley*, 178 Ill. 2d at 198. Any waiver of the right to counsel given in a discussion initiated by the police is presumed invalid. *Woolley*, 178 Ill. 2d at 198.

■ The *Bradshaw* decision set forth a two-prong analysis for applying the *Edwards* rule. *Woolley*, 178 Ill. 2d at 198. The first prong is whether the accused, rather than the police, initiated further discussion after invoking the right to counsel. *Woolley*, 178 Ill. 2d at 198. In order for the accused to "initiate" contact, the accused must make a statement that evinces a willingness and a desire for generalized discussion about the investigation. *Woolley*, 178 Ill. 2d at 198. Communications that relate to routine incidents of the custodial relationship, such as restroom requests, do not constitute "initiation" for the purposes of the *Edwards* rule. *Woolley*, 178 Ill. 2d at 198-99. If the defendant did not initiate a conversation with police after asserting his right to counsel, statements made in response to the interrogation are inadmissible. *Woolley*, 178 Ill. 2d at 199. If the defendant did initiate the conversation with authorities, the court moves to the second prong of *Bradshaw*, which is determining whether the defendant's subsequent waiver of the right to counsel was knowing and intelligent. *Woolley*, 178 Ill. 2d at 199. In this case, we consider: (1) whether defendant's question indicated a desire for a generalized discussion about the investigation and (2) if so, whether defendant knowingly and intelligently waived his previously invoked right to counsel. We begin by reviewing the relevant cases on the issue.

■ *Bradshaw* was the pinnacle case in the development of the law surrounding custodial interrogations, and it contains facts comparable to the case at bar. In *Bradshaw*, the defendant was brought to the police station for questioning regarding a vehicular manslaughter. *Bradshaw*, 462 U.S. at 1041, 77 L. Ed. 2d at 409, 103 S. Ct. at 2832. Police advised the defendant of his *Miranda* rights, questioned him, placed him under arrest, and re-Mirandized him. *Bradshaw*, 462 U.S. at 1041, 77 L. Ed. 2d at 410, 103 S. Ct. at 2833. The defendant denied involvement in the crime and invoked his right to counsel, and police terminated the interview. Sometime later, the defendant was transferred from the police station to the county jail, and during that trip, he asked the police officer, " 'Well, what is going to happen to me now?' " *Bradshaw*, 462 U.S. at 1042, 77 L. Ed. 2d at 410, 103 S. Ct. at 2833. The officer responded by stating: " 'You do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you so desire because anything you say—because—since you have requested an attorney, you know, it has to be at your own free will.' " *Bradshaw*, 462 U.S. at 1042, 77 L. Ed. 2d at 410, 103 S. Ct. at 2833. The defendant stated that he understood, and a conversation ensued in which the officer told the defendant where he was being taken and the offense with which he would be charged. The officer suggested that the defendant could take a polygraph to help his case, and the defendant agreed to do so. The next day, after being read his *Miranda* rights, the defendant signed a waiver of those rights and took the polygraph exam. *Bradshaw*, 462 U.S. at 1042, 77 L. Ed. 2d at 410, 103 S. Ct. at 2833. After failing the exam, the defendant recanted his previous denial and admitted that he drove drunk and was involved in the accident. *Bradshaw*, 462 U.S. at 1042, 77 L. Ed. 2d at 410, 103 S. Ct. at 2833.

The defendant moved to suppress his statements, arguing that they had been obtained in violation of his fifth amendment rights. The trial court denied that motion, and the appellate court reversed. *Bradshaw*, 462 U.S. at 1042-43, 77 L. Ed. 2d at 410, 103 S. Ct. at 2833. The Supreme Court stated that, although ambiguous, the defendant's inquiry as to what was going to happen to him "evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship." *Bradshaw*, 462 U.S. at 1045-46, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835. Such a question reasonably could have been interpreted by the officer as relating generally to the investigation, which the officer apparently did since he advised the defendant that he did not have to talk. Having determined that the defendant's inquiry did evince a willingness to partake in a generalized discussion

about the investigation, the Supreme Court next considered whether the defendant knowingly waived his rights, and determined that he did, in light of the facts and circumstances of the case including that the defendant initiated contact, that the officer advised him of his rights again, and that the defendant acknowledged his rights and agreed to talk. *Bradshaw*, 462 U.S. at 1046, 77 L. Ed. 2d at 412-13, 103 S. Ct. at 2835. Therefore, the Supreme Court held that the defendant's statements were admissible. *Bradshaw*, 462 U.S. at 1046, 77 L. Ed. 2d at 413, 103 S. Ct. at 2835.

Following *Bradshaw*, the Illinois Supreme Court decided *People v. Olivera*, 164 Ill. 2d 382 (1995). In *Olivera*, the 16-year-old defendant went with his father and his attorney to the police station to turn himself in for an offense unrelated to a homicide in which he was implicated. *Olivera*, 164 Ill. 2d at 386. Officers advised the defendant of his *Miranda* rights, and the defendant indicated that he did not wish to speak to the officers beyond providing background information necessary for the arrest report. *Olivera*, 164 Ill. 2d at 386. The defendant's attorney left the station, and later the defendant was turned over to Detective Kato, who was advised that the defendant had turned himself in with his attorney, had been arrested and Mirandized, and had been instructed to make no statement regarding the homicide that was being investigated. *Olivera*, 164 Ill. 2d at 386-87.

Police conducted a lineup in which the defendant was identified by two witnesses. Detective Kato removed the lineup members except for the defendant, who then asked what had happened. Detective Kato responded by telling the defendant that he had been "positively identified." *Olivera*, 164 Ill. 2d at 387. The defendant asked what would happen next, to which Detective Kato responded by advising him of his rights. *Olivera*, 164 Ill. 2d at 387. The supreme court held that the defendant's question of "what happened" did not evince a willingness and a desire for a generalized discussion concerning the investigation, because it was such a limited question. *Olivera*, 164 Ill. 2d at 391. However, the court held that Detective Kato's response that the defendant had been positively identified was one that could, and did, elicit further comment by the defendant and lead to incriminating statements. Because the detective should have known that his response would be reasonably likely to elicit an incriminating statement from the defendant, the proper response to the defendant's question was to advise him of his rights, as the officer in *Bradshaw* did. *Olivera*, 164 Ill. 2d at 392. Thus, the court determined that the police had improperly initiated the interrogation, and it did not proceed to the second prong of *Bradshaw* to determine whether the defendant knowingly and intelligently waived his rights. See *Olivera*,

164 Ill. 2d at 398 (Bilandic, C.J., concurring in part and dissenting in part, joined by Heiple, J.).

Upon further review of *Bradshaw* and *Olivera*, we believe that Chief Justice Bilandic's dissent in *Olivera* has merit. See also *People v. Miller*, 393 Ill. App. 3d 1060 (2009). Chief Justice Bilandic pointed out that the majority failed to acknowledge that in *Bradshaw*, the defendant's question was nearly the same as the question in *Olivera*, and the Supreme Court *had* determined that the defendant's question indicated a desire to partake in a generalized discussion. *Olivera*, 164 Ill. 2d at 399-400 (Bilandic, C.J., concurring in part and dissenting in part, joined by Heiple, J.). Chief Justice Bilandic noted that the majority in *Olivera* strayed from *Bradshaw* when it determined that the police, rather than the defendant, initiated the conversation. *Olivera*, 164 Ill. 2d at 398 (Bilandic, C.J., concurring in part and dissenting in part, joined by Heiple, J.). The dissent stated that the majority imposed on police a requirement to remind a defendant of his right to counsel when the defendant poses a question to which the answer may elicit an incriminating response and further stated that *Bradshaw* contained no such requirement. *Olivera*, 164 Ill. 2d at 398 (Bilandic, C.J., concurring in part and dissenting in part, joined by Heiple, J.). The dissent, thus, believed that the majority should have determined that, like in *Bradshaw*, the defendant's question clearly related to the investigation and should have then proceeded to determine whether, under the totality of the circumstances, the defendant validly waived his previously invoked right to counsel. *Olivera*, 164 Ill. 2d at 400 (Bilandic, C.J., concurring in part and dissenting in part, joined by Heiple, J.).

Later, in *Woolley*, Justice Bilandic did not apply the analysis used in *Olivera* and instead applied the two-prong analysis set forth in *Bradshaw*. In *Woolley*, the defendant was being held for questioning separately from another witness who had identified the defendant as a shooter in a murder case. *Woolley*, 178 Ill. 2d at 195. A detective told the defendant that the witness identified him, and in response the defendant stated that he wanted an attorney and then stated, " 'I killed them. Yeah. I killed them.' " *Woolley*, 178 Ill. 2d at 195. The detective told the defendant that this would be his only opportunity to speak with the police, but in order for them to talk, the defendant would have to recant his request for an attorney. *Woolley*, 178 Ill. 2d at 195. The defendant stated that he wanted to talk without an attorney and then gave the police a statement. *Woolley*, 178 Ill. 2d at 195. The defendant moved to suppress his statement but the trial court denied the motion. *Woolley*, 178 Ill. 2d at 194.

The supreme court determined that the trial court properly considered whether the defendant, after invoking his right to counsel,

initiated further conversation with the police in a manner evincing a willingness for a generalized discussion about the investigation. *Woolley*, 178 Ill. 2d at 199. The supreme court held that the evidence supported the trial court's determination that after invoking his right to counsel the defendant had initiated further conversation when he stated, " 'I killed them.' " *Woolley*, 178 Ill. 2d at 200. The supreme court noted that the trial court was obliged to next determine whether the defendant's subsequent waiver of his right to counsel was knowing and intelligent, but that the defendant had not challenged that finding on appeal. *Woolley*, 178 Ill. 2d at 202-03. The supreme court, therefore, affirmed the trial court's ruling denying the defendant's motion to suppress. *Woolley*, 178 Ill. 2d at 203.

Later, in *Flores*, the First District held that the defendant's inquiry and the police response were strikingly similar to those in *Olivera*. In *Flores*, the defendant invoked his right to counsel and approximately four hours later, requested to use the restroom. *Flores*, 315 Ill. App. 3d at 390. A detective escorted him to the restroom, and on the way back, the defendant looked around and asked " 'what was going on.' " *Flores*, 315 Ill. App. 3d at 390. The detective " 'told him there were a number of State's Attorneys in the office who were reviewing the case, they were deciding who was going to be charged, and what charges were going to be placed.' " *Flores*, 315 Ill. App. 3d at 390. According to the detective, the defendant then asked to speak with the assistant State's Attorney and provided a statement; whether the defendant was re-Mirandized prior to that statement is not indicated. *Flores*, 315 Ill. App. 3d at 391. Without making a determination of whether the defendant's inquiry indicated a willingness or a desire to engage in a generalized discussion about the investigation, the court stated that it was following *Olivera* and concluded that the detective's response was reasonably likely to elicit an incriminating response after the defendant had requested counsel and that it thus violated *Miranda*. *Flores*, 315 Ill. App. 3d at 393-94. Like the analysis in *Olivera*, the analysis in *Flores* is flawed in that it analyzes the detective's statements rather than the defendant's inquiry and whether the defendant validly waived his right to counsel. The *Flores* court made no mention of *Woolley*. Although we do not opine whether *Flores* was wrongly decided, we do not believe the analysis in *Flores* was correct. Therefore, we find the analysis in *Olivera* and *Flores* inapposite, and we instead apply the proper analytical framework set forth in the more recent Illinois Supreme Court case, *Woolley*, and the United States Supreme Court case, *Bradshaw*.

In applying the first prong of *Bradshaw*, we find that defendant's inquiry was nearly identical to the inquiry made in *Bradshaw*. The

*Bradshaw* defendant's question of " 'what is going to happen to me now?' " is substantively the same as defendant's inquiry as to the process he was facing. The Supreme Court determined that the defendant's question indicated his willingness and desire to engage in a generalized discussion about the investigation, unlike an inquiry about restroom use, a drink of water, telephone use, or other matters routine to the custodial relationship. *Bradshaw*, 462 U.S. at 1045, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835. As the *Bradshaw* Court reasoned, an inquiry such as defendant's is not merely a necessary one arising out of the incidentals of the custodial relationship. *Bradshaw*, 462 U.S. at 1046, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835. The trial court in this case acknowledged this fact when it stated that there was obviously a jailer nearby to whom defendant could pose any incidental questions rather than summoning Detective Arsenault. However, unlike the officer in *Bradshaw* who reminded the defendant of his rights, Detective Arsenault did not re-Mirandize defendant before responding with information about the investigation. While our facts are similar to those in *Olivera* and *Flores* where the officers responded to the defendants' inquiries without first re-Mirandizing them, the analysis in those cases, as stated earlier, is flawed. Instead, we determine that, like in *Bradshaw*, defendant's inquiry indicated his desire and willingness to engage in a generalized discussion about the investigation.

Even if we were to find that defendant's inquiry as to the process he was facing was not a communication that initiated contact with authorities about the investigation, defendant initiated contact again when, in response to Detective Arsenault's answer, he stated that he wanted to talk to him again. A similar scenario was recently addressed by the Fourth District. In *People v. Outlaw*, 388 Ill. App. 3d 1072, 1077 (2009), the defendant invoked his right to counsel and during booking asked what "cooperating" with police would entail. A detective told the defendant that it meant assisting in controlled drug buys and sales, and the defendant then asked to speak with the detectives without his lawyer. *Outlaw*, 388 Ill. App. 3d at 1077. While the court determined that the defendant's inquiry about what "cooperating" would entail was clearly related to the investigation and was not a violation of *Edwards*, the court also noted that even if it was not a communication initiated by the defendant relating to the investigation, the defendant's response to the detective's answer, asking to speak without his lawyer, was a second initiation of communication with authorities. *Outlaw*, 388 Ill. App. 3d at 1085. Similarly, in this case, following his initial inquiry about the process, which Detective Arsenault answered without engaging in interrogation, defendant reinitiated communication when he stated that he wanted to talk.

Thus, under either inquiry made by defendant, there was no *Edwards* violation by Detective Arsenault, and we move to the second prong of *Bradshaw*'s analysis.

The second prong of the *Bradshaw* analysis involves determining whether defendant knowingly and intelligently waived his right to counsel when he initiated contact with Detective Arsenault after earlier invoking his right to counsel. The trial court did not specifically address this issue, because it relied on the incorrect analysis of *Olivera* and *Flores*, which essentially expounded a requirement that an officer re-Mirandize a defendant after he initiates contact, instead of determining whether defendant knowingly and intelligently waived his rights. A waiver of *Miranda* rights is valid where (1) the decision to relinquish the rights was voluntary in the sense that it was not the product of intimidation, coercion, or deception, and (2) it was made with a full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *People v. Scott*, 148 Ill. 2d 479, 509 (1992). The validity of the waiver is a question of fact, which must be determined by the totality of the circumstances. *Scott*, 148 Ill. 2d at 509. The State has the burden of proving validity by a preponderance of the evidence, and if the State makes a *prima facie* case, the burden shifts to the defendant to show that his waiver was not knowing and intelligent. *Scott*, 148 Ill. 2d at 509-10.

In *Bradshaw*, there was little doubt as to validity, as the detective responded to the defendant's inquiry with an advisement of his rights, and the defendant was re-Mirandized before submitting to the polygraph exam that ultimately resulted in incriminating evidence. However, as Chief Justice Bilandic pointed out in his *Olivera* dissent, *Bradshaw* did not hold that an officer is *required* to remind the defendant of his right to counsel when the defendant initiates contact with authorities about the investigation. Again, we consider *Outlaw*. In *Outlaw*, the court considered the fact that the statements that the defendant sought to suppress were made after he asked to speak to the detectives without his lawyer and after he was re-Mirandized. *Outlaw*, 388 Ill. App. 3d at 1086. However, unlike in this case, the trial court in *Outlaw* actually made the finding that the defendant had knowingly and intelligently waived his right to counsel.

■ Whether defendant knowingly and intelligently waived his right to counsel must be determined by the trial court on remand, by considering the totality of circumstances via the *Bradshaw* analysis. We note that the trial judge who conducted the suppression hearing is no longer sitting in the trial court, and this case will necessarily be assigned to a new judge. Where the original judge made no credibility determinations in the prior proceeding, the successor judge may rely

on the transcripts of the proceeding in lieu of a proceeding *de novo* if the parties agree to stand on the transcripts of the prior proceeding. See *Anderson v. Kohler*, 376 Ill. App. 3d 714, 722-24 (2007). Thus, on remand, the parties must consider whether to proceed upon the transcripts or to conduct a proceeding *de novo* on the issue of whether, under the totality of the circumstances of this case, defendant knowingly and intelligently waived his right to counsel.

Based on the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand for further proceedings.

Reversed and remanded.

ZENOFF, P.J., and McLAREN, J., concur.