THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL EICHWEDEL, Defendant-Appellant.

First District (4th Division)   No. 1—90—1190

Opinion filed May 27, 1993.

Michael J. Pelletier and Manuel S. Serritos, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Ann L. Benedek, Special Assistant State's Attorney, and Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a bench trial, the defendant Paul Eichwedel was convicted of first degree murder and solicitation to commit murder and sentenced to concurrent prison terms of 50 years and 30 years, respectively. He contends on appeal that the trial court erred in refusing to suppress his confession because it was made after the police failed to honor his request for counsel and because it was involuntarily given. The defendant also contends that he was improperly convicted of both the principal and inchoate offenses, that the judgment order must be corrected to accurately state his sentence for solicitation and that the trial court abused its discretion in imposing sentence.

The defendant was charged with murder, conspiracy to commit murder and solicitation to commit murder in connection with the homicide of his brother-in-law, David Schultz, on July 5, 1986. Prior to trial, he made a motion to suppress his confession on the grounds that it was made after the police refused his request for counsel and that it was involuntarily given. The following is a summary of the evidence presented at the hearing on the motion to suppress.

On November 13, 1987, undercover officers made a purchase of narcotics from the defendant at his apartment. This was the third such transaction. After the defendant was arrested, he expressed a desire to cooperate with the police in an effort to avoid going to jail. The defendant was taken to the State's Attorney's office at 26th and California, advised of his constitutional rights, then questioned about

thefts of gas from Peoples Gas Company. The defendant provided the police with information concerning the thefts. The defendant testified that during the course of the interrogation, he was told that he would serve a minimum of 18 years on the drug charges, that his family's property would be forfeited and that if he failed to cooperate he would be taken to the Cook County jail, where he would be subjected to acts of sodomy by the other inmates. At least one of the officers admitted discussing the potential jail sentence; the officers denied making the remaining statements testified to by the defendant. At approximately 3 a.m., the defendant was taken to the witness quarters located in the State's Attorney's office.

On November 14, 1987, at approximately 5 p.m., the defendant was questioned by Investigator Michael Staunton. It was during this interview that the defendant claims his request for counsel was denied. Staunton testified to the following exchange with the defendant:

"[ASSISTANT STATE'S ATTORNEY] Q. What, if anything, did you say to the defendant and what, if anything, did the defendant say to you?

[STAUNTON] A. He asked me to call, if he could call Jeff Williams.

Q. And what did you say to the defendant at this point?

A. I asked him if he was a criminal attorney.

Q. What did he say?

A. He said no.

Q. And what did you say at this point?

A. I told him to sit still and wait there for awhile, that I would be right back and I left the room.

Q. Did you return to the room a period of time later?

A. Yes.

Q. How long?

A. I would say I was gone maybe ten minutes.

Q. Was anybody else there when you got back besides the defendant?

A. No.

Q. Did you resume your conversation with the defendant at that point?

A. Yes, I did.

Q. What did you say to him and what did he say to you?

A. I asked him if he knew a criminal attorney and he said no. I then said that we could provide him with a list of criminal attorneys and he would be able to call one of those.

Q. What did he say?

A. He said, 'What would happen if he called a criminal attorney?' And I said—

Q. What did you say to him?

A. I said that we would have to process him, that he [had] not been processed yet; that we would have to take him across the street to the Cook County Jail to have him processed and sent into the system.

Q. Did you tell him that if he wanted an attorney, that he couldn't cooperate anymore?

A. No, I did not.

Q. And what did he say, did he tell you after you said this?

A. He asked me what would happen if he continued to cooperate with us.

Q. And what did you?

A. I said, well, we would have to have you sign a Miranda, your Miranda Rights and then we could continue the interview.

Q. And what did he say?

A. He at that time agreed to sign the Miranda Rights."

The defendant testified that during the conversation with Staunton he specifically asked to call "Jeff Williams, my attorney, at that time."

During the course of the questioning that followed, the defendant confessed to hiring a co-worker named Danny Robinson to kill the defendant's brother-in-law, David Schultz. This confession was the subject of the defendant's motion to suppress.

The trial court denied the motion, finding that the defendant's will had not been overborne by police threats or promises and that the confession was therefore voluntarily given. With respect to the claimed denial of the defendant's request for counsel, the court made the following findings:

"My recollection when I reviewed the record was that [the defendant] asked if he could contact a Jeff Williams and identified him initially himself as an attorney. That inquiry, as I understand it from the evidence, I don't think can be construed as the defendant invoking his right to counsel. It was an inquiry. I don't have any doubt that the inquiry was made.

*** I am not convinced that [the defendant] persisted in that or made it perfectly clear that he didn't want to talk anymore unless he could talk to Jeff Williams. I didn't see any unequivocal a man wanting an attorney."

The court accordingly denied the defendant's motion to suppress his confession.

The defendant was tried in a bench trial held simultaneously with Danny Robinson's jury trial. The defendant's confession was introduced into evidence. The State also presented evidence that the defendant had solicited two other men to murder the victim and that he had made statements wishing for the victim's death. The evidence also showed that the defendant had obtained insurance policies on the life of the victim and had collected the proceeds. A handwriting expert testified that a payment schedule of monies paid to Robinson had been written by the defendant.

Following trial, the defendant was convicted of first degree murder and solicitation to commit murder and sentenced to concurrent prison terms of 50 years and 30 years, respectively.

On appeal, the defendant contends that the court erred in denying the motion to suppress his confession. He argues that the police refused to honor his request for counsel and to immediately terminate the questioning, thereby violating his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. The State's sole response to this contention is that the defendant's query as to whether he could call his attorney was a mere inquiry and was insufficient to constitute an invocation of his right to counsel.

■ An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel. (*Edwards v. Arizona* (1981), 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885.) This is a rigid prophylactic rule embodying two distinct inquiries. (*Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490.) First, the court must consider the threshold inquiry of whether the accused actually invoked his right to counsel. If it is determined that he did, his responses to further questioning may be admitted only where the defendant (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Edwards v. Arizona*, 451 U.S. at 486 n.9, 68 L. Ed. 2d at 387 n.9, 101 S. Ct. at 1885 n.9.

■ This cause concerns the threshold inquiry of whether the defendant's words constituted an invocation of his right to counsel. In making this determination, we note the language of *Miranda v. Arizona* stating that questioning must cease if the accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking." (*Miranda v. Arizona* (1966), 384

U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.) Here, Investigator Staunton testified that at one point during the questioning, the defendant "asked me to call, if he could call Jeff Williams." The defendant testified that he identified Jeff Williams as an attorney, and the trial court stated in its findings that the defendant identified Jeff Williams as an attorney. In our view, the defendant's request as to whether he could call his attorney was a sufficient invocation of his right to counsel. We find the defendant's words distinguishable from the words used in the cases cited by the State, such as *People v. Krueger* (1980), 82 Ill. 2d 305, 308, 412 N.E.2d 537, 538, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 390, 101 S. Ct. 3009 ("Maybe I need a lawyer"), and *People v. Wieland* (1984), 123 Ill. App. 3d 576, 580, 462 N.E.2d 1256, 1259 (defendant stated he was not sure whether he should take a polygraph test because he did not have a lawyer). Although the defendant here phrased his request as an inquiry, we read the language in *Miranda*, which allows the invocation to be made "in any manner," as requiring the rejection of any suggestion that exact, talismanic language is required.

Instead of immediately discontinuing the questioning, Staunton asked the defendant whether Jeff Williams was a criminal attorney, and, after conferring with his supervisor, offered to provide the defendant with a list of criminal attorneys. Staunton told the defendant that "he would be able to call one of those." After further discussion, the defendant signed a *Miranda* waiver and eventually confessed.

The State characterizes Staunton's actions as an attempt to answer the defendant's inquiries concerning his right to an attorney rather than as continued interrogation. A very similar situation was considered by the Supreme Court in *Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490. In *Smith*, the defendant was arrested and taken to an interrogation room. The officer questioning the defendant gave him the *Miranda* warnings, informing him that "[y]ou have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?" The defendant responded, "Uh, yeah, I'd like to do that." Instead of terminating the questioning at that point, the officer finished reading Smith the *Miranda* rights, then asked, "Do you wish to talk to me at this time without a lawyer being present?" The defendant answered, "Yeah and no, uh, I don't know what's what, really." He subsequently agreed to answer questions without the presence of counsel. The Supreme Court held that the defendant's initial response constituted an unequivocal request for counsel and that, under the

bright-line rule stated in *Edwards*, "*all* questioning must cease after an accused requests counsel." (Emphasis in original.) *Smith*, 469 U.S. at 98, 83 L. Ed. 2d at 495, 105 S. Ct. at 494.

We believe that the defendant's right to have counsel present during questioning was violated and that the trial court erred in denying the motion to suppress his confession. Accordingly, we reverse the judgment of the circuit court and remand the cause for a new trial. In doing so, we reject the State's contention that the error was harmless. The admission of an unlawfully obtained confession will rarely be considered harmless error (*People v. St. Pierre* (1988), 122 Ill. 2d 95, 114, 522 N.E.2d 61), and we do not believe it was harmless in the case at bar.

Our disposition of the cause on this basis makes it unnecessary for us to address the remaining issues raised by the defendant.

Accordingly, the judgment of the circuit court is reversed and remanded.

Reversed and remanded.

CAHILL and HOFFMAN, JJ., concur.