++ Notepad File ++ 

                         No. 3--02--0059

_________________________________________________________________

    IN THE

                   APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                           A.D., 2003

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 9th Judicial Circuit,

       )  Henderson County, Illinois,

Plaintiff-Appellant,  )

                                )

v.                         )  No. 01--CF--37

  )

STEPHEN A. HOWERTON,            )  Honorable

  )  Ronald C. Tenold,

Defendant-Appellee.        )  Judge Presiding.

________________________________________________________________

PRESIDING JUSTICE McDADE delivered the opinion of the court:                           

________________________________________________________________

Defendant Stephen A. Howerton was charged in a 10-count indictment with the first degree murder of Dwight Vice (720 ILCS 5/9--1(a)(1), (a)(2) (West 2000)) and the attempted murder of Darrell Vice (720 ILCS 8--4(a), 9--1(a)(1) (West 2000)).  Defendant filed a motion to suppress statements.  The circuit court granted the motion, and the State appeals.  We affirm.

At the suppression hearing, Galesburg police investigator Dennis Shepherd and Detective Tony Riley testified that they picked defendant up at his home on June 15, 2001, for questioning in connection with the homicide investigation.  According to Shepherd, Brian Boyd was in custody for the offenses, and Boyd had implicated defendant.  Shepherd said he did not tell defendant he was under arrest when he picked him up.  However, he brought defendant to the Public Safety Building and advised him of his 
Miranda
 rights, including his right to an attorney, before initiating the interview.  

Shepherd told defendant he did not believe defendant killed anyone, but that he (defendant) was a "victim."  Shepherd said he needed to know if defendant was in a place he did not want to be and had been threatened.  He told defendant it was important to tell the truth.  Defendant said if he was under arrest, he wanted a lawyer.  Shepherd testified that he did not consider defendant under arrest at the time.  However, he admitted that a videotaped recording showed that around 6:12 p.m., about a half hour after the interview began, Shepherd told defendant he was under arrest and defendant first stated he wanted a lawyer.  The videotape revealed that defendant subsequently told Shepherd to get him a lawyer and take him "upstairs" (to a jail cell).  Shepherd ignored the request and continued the interrogation.  During the balance of the interview, defendant asked for a lawyer on three more occasions, all of which were ignored by Shepherd and Riley.

Detective Riley testified that he was present during Shepherd's interrogation of defendant.  He said he recalled only one instance when defendant said he wanted to see an attorney if he was under arrest.  He denied that defendant was charged with anything in his presence, but admitted on cross-examination that defendant was told he was under arrest on more than one occasion.  Ultimately, Shepherd and Riley left the interview room and State Police officers Kenneth Kedzior and Laurence Knicl entered to resume the interrogation. 

Kedzior testified that he was aware that the defendant had mentioned a lawyer during questioning by Shepherd and Riley, but he said defendant never requested a lawyer in his presence.  Kedzior said defendant was not formally arrested until after the interview was completed.  The following day, Kedzior had defendant brought to the Henderson County sheriff's office for further questioning.  Defendant did not initiate the interview or make any further requests for counsel.  In addition to the officers' testimony, the videotape of interviews conducted on June 15 and 16 was admitted into evidence.

Following arguments of counsel, the trial court found that defendant was in custody when he was brought to the Public Safety Building for questioning on June 15, 2001.  The court further found that defendant's statements were not involuntary, but that Officers Shepherd and Riley reasonably should have believed that defendant was requesting counsel when he first stated that if he was under arrest, he wanted a lawyer.  Accordingly, the court ruled that all statements made to the officers after 6:12 p.m. on June 15 were taken in violation of 
Miranda
 and must be suppressed in the State's case in chief.

On appeal, the State argues, as it did in the trial court, that defendant's references to counsel were no more than ambiguous or equivocal requests.  Defendant contends that his numerous requests could not have been a clearer invocation of his rights to counsel and to remain silent.  Any discrepancies between the officers' testimony and the police videotape are resolved by the videotape, which we have viewed in its entirety.  Accordingly, the relevant facts are not in dispute on appeal; the issue before us is a question of law, and our review is 
de
 
novo
.  
People v. Oaks
, 169 Ill. 2d 409, 662 N.E.2d 1328 (1996).   

In 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the Supreme Court announced the procedures the police must follow once a suspect is taken into custody and his rights and waiver warnings are given.  If the suspect indicates that he wishes to remain silent, interrogation must cease.   
Miranda
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. 
 Likewise, if he invokes his right to counsel, all interrogation must cease until an attorney is present.  
Miranda
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; see also 
Minnick v. Mississippi
, 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486 (1990).  The mere mention of a lawyer during interrogation is not an invocation of the right to counsel.  
Davis v. United States
, 512 U.S. 452, 129 L. Ed. 2d 362, 114 S. Ct. 2350 (1994).  However, the police may not continue questioning a suspect who unambiguously indicates that he does not wish to speak in the absence of an attorney.  
Davis
, 512 U.S. 452, 129 L. Ed. 2d 362, 114 S. Ct. 2350.

In 
Edwards v. Arizona
, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), the Court expanded 
Miranda
, holding that "once a person invokes his right to counsel during custodial interrogation, he 'is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' "  
People v. Villalobos
, 193 Ill. 2d 229, 233, 737 N.E.2d 639, 642 (2000), quoting 
Edwards
, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885.  A defendant's waiver of the right to counsel in a further discussion initiated by the police is presumed invalid, and statements obtained pursuant to such a waiver are inadmissible in the prosecution's case in chief.  The 
Edwards
 rule is designed to prevent the police from badgering a defendant into waiving previously asserted 
Miranda
 rights.  
People v. Winsett
, 153 Ill. 2d 335, 606 N.E.2d 1186 (1992).  To ensure that procedural dictates are followed, the supreme court has declared that statements taken in violation of the principles established in 
Miranda
 and 
Edwards
 may not be used as substantive evidence against the accused at trial.  
Winsett
, 153 Ill. 2d 335, 606 N.E.2d 1186.

In this case, the police videotape establishes that defendant clearly and unequivocally invoked 
Miranda
 rights on five occasions during the interrogation by Officer Shepherd.  Immediately after being told that he was under arrest, defendant indicated that he wanted to terminate the interview or speak with an attorney.  He stated, "Take me upstairs then if I'm under arrest.  Either that or I want a lawyer because--."  Rather than respecting defendant's assertion of his rights, Shepherd interrupted, "Are you that stupid?"  Shepherd then persisted in badgering defendant to disclose what he knew about the murder and attempted murder under investigation.  A few minutes later, defendant stated, "Get me a lawyer.  Take me upstairs, because there's nothing I can tell you."  Ignoring defendant's request again, Shepherd repeated his exhortations to tell the truth and protect himself.  Defendant repeated his request, stating, "Take me upstairs and let me get my lawyer because there's nothing I can tell you."  Shepherd told defendant he was being charged with the same offenses that had been charged against Boyd.  In response, defendant said, "Well, can I have a lawyer then?"  Shepherd once again ignored the request and continued haranguing the defendant to admit that he was at the scene of the murder.  Finally, defendant told Shepherd, "Just book me.  I'll have to get a lawyer and try it in court."  A short time later, Shepherd and Riley left the room, only to be replaced by the State Police agents, who ultimately extracted defendant's inculpatory statements.

Based on this evidence, the trial court correctly concluded that the only reasonable interpretation of defendant's remarks was that he was invoking his
 right to counsel from the point where he first indicated that, if he was under arrest, he wanted either to go "upstairs" or have a lawyer appointed.  Compare 
Winsett
, 153 Ill. 2d 335, 338, 606 N.E.2d 1186 (defendant's statement, "I want a lawyer," made upon arrest at defendant's home, required suppression of statements subsequently made at police station in violation of 
Miranda
), with 
Davis
, 512 U.S. 455, 129 L. Ed. 2d at 368, 114 S. Ct. 2353 (Court held that defendant's comment, "Maybe I should talk to a lawyer," was not a clear invocation of right to counsel), and 
Oaks
, 169 Ill. 2d at 451, 662 N.E.2d at 1347 (following 
Davis
, court ruled that defendant's inquiry, "Should I see a lawyer?" was an equivocal request for counsel). Pursuant to 
Edwards
, suppression of the statements given by defendant both on the evening of June 15 and  on the morning of June 16 was required by 
Miranda
's exclusionary rule.  Accordingly, we hold that the trial court did not err in granting defendant's motion to suppress statements.

For the foregoing reasons, we affirm the judgment of the circuit court of Henderson County.

Affirmed.

LYTTON and SLATER, JJ., concur.