No. 2-09-0194    Filed: 4-9-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--CF--713 |
| GARY W. SCHUNING, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BOWMAN delivered the opinion of the court:

On March 23, 2006, defendant, Gary W. Schuning, was indicted for the stabbing deaths of two victims on February 26, 2006.  720 ILCS 5/9--1(a)(1) (West 2006).  On August 14, 2008, defendant filed an amended motion to suppress certain statements that he made to officers on February 27, February 28, and March 7, 2006.  On January 21, 2009, defendant's motion was denied in part and granted in part.  The trial court denied defendant's motion to suppress the statement that he made on February 27, 2006, at 2:26 p.m.  However, the trial court granted defendant's motion to suppress the statements he made at or after 5:45 p.m. on February 27, 2006, because the State violated Miranda with respect to defendant's invocation of his right to counsel.  The State moved for reconsideration, and the trial court denied that motion on February 19, 2009.  The State filed a certificate of impairment and timely appealed the trial court's order pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).  We affirm.

## I. BACKGROUND

On appeal, the State argues that the trial court erred in partially granting defendant's motion to suppress, because defendant never invoked his right to counsel. The statements at issue were given while defendant was hospitalized at Loyola University Medical Center in Maywood, where he underwent critical surgery and treatment for serious self-inflicted stab wounds to his chest, abdomen, and neck. Defendant argues that, when he asked if he could use a phone and call his attorney at 5:45 p.m. on February 27, 2006, after an initial interrogation by police earlier that day, he sufficiently invoked his right to counsel under Edwards v. Arizona, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885 (1981). Therefore, defendant argues, the trial court properly suppressed all of the statements that he made after that time.

The following facts are derived from the testimony adduced at the hearing on defendant's suppression motion. Prior to witness testimony, the State stipulated to the factual allegations contained on page 5, in paragraphs 14 through 18, of defendant's amended motion to suppress. Those paragraphs provided:

"14. In addition, prior to February 28th, on February 27th at approximately 5:45 p.m., [defendant] asked Officer Giertz of the Addison Police to use the telephone to call his attorney.

15. At the time, [defendant] was in the ICU.

16. Officer Giertz told [defendant] that yes, he could call his attorney.

17. Despite Officer Giertz's agreement to allow [defendant] to call his attorney, the ICU nurse told [defendant] that phones could not be used in the ICU.

18. Ultimately, [defendant] fell asleep in the ICU and was unable to make his requested telephone call."

The State further stipulated to the factual allegations contained on page 7, in paragraphs 4 through 12, of defendant's amended motion. Those paragraphs provided that on February 28, 2006, at 5 p.m., defendant asked Officers Tierney and Brucal of the Addison police department if he could call his attorney to consult with him about the search warrant that the officers were executing. Defendant asked that his attorney be present during the execution of the search warrant. On March 2, 2006, at 6:30 a.m., Officer Tierney returned to defendant's hospital room with Officer Anderson pursuant to the search warrant to obtain additional samples from defendant's body. On that date, defendant asked Officer Tierney to obtain the telephone number of his attorney, John Carbon. Officer Tierney complied with defendant's request, and defendant called Carbon but was unable to reach him. On March 3, 2006, just after 3:34 p.m., defendant asked Officer Brant of the Addison police department for permission to call his grandmother and was told by Officer Brant that defendant could place calls only to his attorney. At 3:35 p.m., at defendant's request, Officer Brant called Carbon and when Carbon's answering service picked up, he handed the phone to defendant. Defendant provided Carbon's answering service with his hospital room phone number and his room number and requested that Carbon give the information to his grandmother.

The State then called its first witness, Officer Brian Goss of the Addison police department. On February 26, 2006, Officer Goss was called to a home on Yale Street where two persons were dead and one was injured in an apparent double homicide. Defendant was the injured party and was taken to Loyola. Officer Goss did not speak with defendant at the scene. He first spoke with defendant on February 27, 2006, at 2:26 p.m. in defendant's intensive care hospital room at Loyola.

Officer Sean Gilhooley was present when Officer Goss interviewed defendant. Prior to the interview, Officer Goss spoke to defendant's nurse about his condition. Officer Goss knew that the day before, defendant was in a drug-induced coma and underwent open-chest surgery. Defendant also had a nasogastric tube inserted in his throat. The nurse advised Officer Goss that he was being taken off Propofol, the coma-inducing drug, which would take 1 to 1½ hours to exit defendant's system. The nurse also stated that the nasogastric tube would be removed that day. The tube was removed around 1:10 p.m. that day, and the physician removing the tube told Officer Goss to wait a half an hour to one hour before speaking with defendant. After the tube was removed, Officer Goss observed defendant answering questions posed by his nurse. His voice was hoarse but he responded appropriately to basic questions.

At 2:26 p.m., Officer Goss began to interview defendant. At the time of the interview, defendant had an intravenous line running into his arm and his index finger and was hooked up to a heart monitor. Officer Goss had a microcassette audio recorder in the pocket of his jacket. The wire was strung down his sleeve "in attempts to try to hide the audio recorder so that the defendant didn't see it." He admitted that he intended to record the conversation with defendant regardless whether defendant wished to have the interview recorded. The entire interview was recorded.

We briefly summarize the audiotape of the February 27 interview. Officer Gilhooley introduced himself and Officer Goss as officers with the Addison police department. Defendant was asked where he was and he responded "Loyola Hospital." Officer Gilhooley told defendant that they wanted to ask him some questions and then read defendant his <u>Miranda</u> rights individually, and defendant acknowledged that he understood each of these rights as they were read. The officers asked how defendant felt, and defendant stated that his torso hurt. The officers began questioning

defendant about the events that took place the day before. The officers asked defendant to speak up at times so that the recording device would record his answers. Defendant sounded coherent and lucid during the interview.

Defendant proceeded to tell the police that he came home after being at a nightclub in Chicago and called some escort services. Defendant then provided details about the events surrounding the double murder. As the officers began to conclude the interview, defendant said "keep recording." Defendant acknowledged that he knew the interview was being recorded, and he knew that he did not have to talk to the officers. The officers asked whether defendant would want to talk again later or be willing to answer more questions later, and defendant said "I guess." The officers then said that if they needed to, they would come talk to him again. At 3:11 p.m., the February 27, 2006, interview ended.

At 3:25 p.m. on February 27, 2006, the audiotape resumed with officers asking defendant to authorize that his medical records be released to the Addison police department. Defendant questioned what records, and the officers stated his medical records from his stay at Loyola. Defendant then agreed and signed an authorization form.

Officer Goss's testimony was consistent with defendant's tape-recorded statement from February 27. On cross-examination, Officer Goss admitted that he and Officer Gilhooley were assigned to this double-homicide investigation on February 26 and were responsible for keeping abreast of all of the developments in the case, including the progress of other officers' interviews and discoveries about the case. Officer Goss acknowledged defendant's exhibit No. 1, which was the report of Officer Giertz. The report indicated that on February 27, at 5:45 p.m., defendant asked Officer Giertz if he could phone his attorney. Defendant was denied permission to use the phone by

the nurse. Officer Goss admitted that officers took no action to enable defendant's wish to speak to his attorney. Officer Goss admitted that he did not speak with Officer Giertz regarding his report or regarding defendant's request. In fact, Officer Goss admitted that he had not read Officer Giertz's report, and was not aware of defendant's request, until several days later, sometime after the March 7 interview.

Officer Goss testified that on February 28, 2006, at 8:26 a.m., he and Officer Gilhooley returned to Loyola Hospital to interview defendant. Defendant was administered his <u>Miranda</u> rights, and defendant acknowledged each right and that he understood each right. Defendant proceeded to answer more questions related to the double murder.

We next summarize the audiotape recording of the execution of the search warrant on February 28, 2006. During the execution of the search warrant, by Officer Tierney and Officer Brucal, defendant stated that he wanted a lawyer present for the search. An officer told defendant it was his right to have an attorney present but that the presence of an attorney would not affect the execution of the search warrant. Defendant informed the officer that he had not been able to make a phone call since he arrived at Loyola Hospital. He asked how he could obtain a lawyer when he had not been able to call a lawyer. Defendant reiterated that he wanted a lawyer present but said that, if they were not going to stop collecting samples, the officers could continue.

Officer Goss admitted that he did not become aware of defendant's February 28th statements to Officer Tierney until after March 7, 2006. Officer Goss then acknowledged defense exhibit No. 2, which was a police report by Officer Anderson dated March 2, 2006. In the report, Officer Anderson indicated that at 6:35 a.m. on March 2, defendant called Carbon. Officer Goss admitted that he was not aware of defendant's phone call until after March 7.

Officer Goss then acknowledged defense exhibit No. 3, a police report by Officer Brant, which indicated that on March 3, 2006, at 3:34 p.m., defendant asked to call his grandmother. Officer Brant informed defendant that he could call only his attorney. Officer Brant then dialed Carbon's phone number and handed the phone to defendant. Officer Goss again admitted that he was not aware of this exchange until after March 7.

Defense exhibit No. 4 was a police report by Officer Sinkule, which noted that at 9:33 a.m. on March 6, 2006, defendant placed a phone call to a former girlfriend. Officer Sinkule heard defendant tell her that he needed a lawyer but could not afford one. Again, Officer Goss was not aware of this report until sometime after March 7.

The State then rested, and the defense called Officer Gilhooley as its first witness. Officer Gilhooley admitted that when he and Officer Goss returned to defendant's hospital room on February 28, 2006, he was unaware that in the afternoon of February 27, defendant asked Officer Giertz for permission to call his lawyer. He also was not aware of defendant's subsequent requests to Officer Tierney on February 28, Officer Anderson on March 2, and Officer Brant on March 3, and Officer Sinkule's report of defendant's phone conversation with an ex-girlfriend, until after the final interview with defendant on March 7.

Officer Douglas Giertz testified that he was assigned to watch defendant while he was in the hospital. At approximately 5:45 p.m. on February 27, 2006, defendant asked Officer Giertz if he could use a telephone and call his attorney. Officer Giertz said that he could use a phone but did not hand him a phone and did not know whether there was a phone in the room. A nurse then entered the room, and defendant asked the nurse if he could use a phone. The nurse advised defendant that phones were not allowed in intensive care unit rooms. According to Officer Giertz, defendant then

fell asleep. Officer Giertz did not advise anyone that defendant had requested to call his attorney. He did include it in his police report. Officer Giertz could not recall whether he had a cell phone with him but was aware that there was a phone available at the nurse's station. He admitted that he did not ask defendant any clarifying questions about the request, because he did not believe defendant was seeking to invoke his right to counsel.

Officer Steve Anderson testified that on March 2, 2006, he was guarding defendant's hospital room. At 5:45 a.m., Officer Mike Tierney arrived to execute a search warrant to collect certain items from defendant's body. At approximately 6:30 a.m., Officer Anderson heard defendant ask for the telephone number of his attorney. Officer Tierney obtained Carbon's phone number and gave it to defendant. Defendant then called Carbon. Officer Anderson included this information in his police report but he did not verbally inform anyone. The conversation was short and Officer Anderson heard them discuss money and heard defendant state that he would be receiving a tax refund. On cross-examination, Officer Anderson denied that defendant was being questioned at the time of his request for Carbon's phone number and denied that defendant stated anything to the effect that he did not want to answer any questions without an attorney present.

Officer Eric Brant testified that on March 3, 2006, he was guarding defendant's hospital room. At 3:34 p.m. that day, defendant asked to call his grandmother. Officer Brant informed defendant that he could call only his attorney. Defendant then requested to call his attorney. Officer Brant dialed Carbon's phone number and handed defendant the receiver. Defendant left a message for Carbon indicating that he wanted Carbon to tell his grandmother his room number and phone number. Officer Brant verbally told the officer who took over guarding defendant what had happened and included the information in his report.

Officer Omar Brucal testified that on February 28, 2006, he and Officer Tierney arrived at defendant's hospital room to execute a search warrant. During the execution of the warrant, defendant indicated that he wanted an attorney present. The officers responded on two occasions that defendant could have an attorney present but that they would not stop collecting samples, because they had a warrant. Officer Brucal did not inform anyone that defendant had asked for an attorney.

Officer Michael Tierney testified that on February 28, 2006, he and Officer Brucal went to defendant's hospital room to execute a search warrant. At one point, defendant expressed that he wanted an attorney present. Officer Tierney responded that defendant was free to contact an attorney but that it would not prohibit the officers from executing the search warrant. Officer Tierney did not inform anyone else about defendant's request. He admitted that defendant had stated that he had not been allowed to contact his attorney and did not believe that his attorney knew where he was. On March 2, 2006, Officer Tierney returned to defendant's hospital room to collect more samples pursuant to the search warrant. Officer Anderson was in the room at the time, guarding defendant. Around 6:30 p.m., defendant asked Officer Tierney to get him Carbon's phone number. Officer Tierney obtained the phone number by dialing 411 and provided the phone number to defendant. He did not observe defendant do anything with the phone number. Officer Tierney also did not verbally report this information to anyone else, because the audiotape was recording.

Officer John Sinkule testified that he was guarding defendant on March 6, 2006, when defendant received a phone call from Anna Colonero. Officer Sinkule heard defendant state that he needed an attorney and that he could not afford one. Officer Sinkule included this information in his report but did not verbally inform anyone of this information.

Sergeant Mark Van Stedum of the Addison police department testified that all the reports filed by the guarding officers in defendant's case would have or should have gone to Officer Gilhooley. Sergeant Van Stedum did not recall reviewing the reports by the guarding officers until sometime in April 2006, when he signed the reports.

Sergeant Joseph Lullo of the Addison police department testified that he reviewed reports submitted by some of defendant's guarding officers, signed off on them, and then forwarded them to the investigations unit, which was supervised by Sergeant Van Stedum. Sergeant Lullo supervised patrol officers, some of whom were placed on guard duty over defendant. He did not verbally report anything that was contained in any reports he reviewed to anyone in the investigations unit, which included Officers Gilhooley and Goss.

The parties then stipulated to the phone records of Anna Colonero, which supported that she had called defendant's hospital room on several occasions.

On January 21, 2009, the trial court issued its ruling. The trial court found that defendant was undoubtedly in custody at the scene of the crime and every moment after that point. He was treated at Loyola Hospital for his injuries, undergoing invasive surgery. When defendant was able to speak, he was interviewed. The first interview took place on February 27, 2006, at 2:26 p.m. The court found that this first interview was admissible because defendant was properly administered his Miranda warnings, he knowingly and voluntarily waived his rights, and he answered the officers' questions. The court did not find that the interview was the product of coercion or that defendant was under the influence of any medication such that his statement was involuntary.

The trial court next considered the exchange between defendant and Officer Giertz at 5:45 p.m. on February 27, 2006. The trial court concluded that defendant had invoked his right to counsel

during this exchange. Defendant indicated that he wanted to use the telephone to call an attorney and that Officer Giertz informed defendant that he could do so. However, no phone was available so defendant was unable to contact his attorney. Because defendant invoked his right to counsel, the trial court ruled, case law provided that he was not to be subjected to further interrogation until counsel had been made available to him unless he validly waived his earlier request by initiating contact. Here, the trial court determined that defendant's statement to Officer Giertz was unequivocal and was not a mere reference to a lawyer. The trial court noted that, while it did not believe that the officers acted in bad faith in thinking defendant had not invoked his right to counsel, and while Officers Goss and Gilhooley in good faith did not know of defendant's invocation, that knowledge was imputed to them. Therefore, because there was no evidence that defendant had initiated any of the conversations that followed the February 27, 2006, exchange with Officer Giertz, the interviews of February 28 and March 7 were inadmissible. On February 19, 2009, the trial court denied the State's motion for reconsideration. The State timely appealed and argues that the trial court erred because defendant never invoked his right to counsel in his conversation with Officer Giertz.[1]

## II. ANALYSIS

When reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. We review the trial court's findings of historical fact and will reverse those

---

[1]The parties do not dispute that the invocation of the fifth amendment right to counsel applies to later interrogations even if the interrogating officers are unaware of the invocation. Arizona v. Roberson, 486 U.S. 675, 687, 100 L. Ed. 2d 704, 717, 108 S. Ct. 2093, 2101 (1988). Thus, we evaluate the statements made to Officer Giertz knowing that awareness of such statements is imputed to Officers Gilhooley and Goss.

findings only if they are against the manifest weight of the evidence. People v. Crotty, 394 Ill. App. 3d 651, 655 (2009). We review de novo the trial court's ultimate legal ruling as to whether suppression is warranted. Crotty, 394 Ill. App. 3d at 655. Here, the parties do not dispute what words defendant stated but only whether his words constituted an invocation of his right to counsel. Thus, we review only the trial court's ultimate legal conclusion that suppression was warranted, which we review de novo. See Crotty, 394 Ill. App. 3d at 655.

A criminal defendant has a constitutional right to counsel at all custodial interrogations, as provided by both the United States and Illinois Constitutions. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §10; People v. Flores, 315 Ill. App. 3d 387, 392 (2000). In order to invoke the Miranda right to counsel, a defendant must be in custody and subject to interrogation or under imminent threat of interrogation. People v. Villalobos, 193 Ill. 2d 229, 241-42 (2000). Once a defendant invokes that right, the police cannot interrogate him further unless the accused initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885 (1981). The Edwards rule is designed to prevent the police from badgering a defendant into waiving his previous assertion of his right to counsel. People v. Woolley, 178 Ill. 2d 175, 198 (1975). Thus, if the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are inadmissible as substantive evidence at trial. Woolley, 178 Ill. 2d at 198. Any waiver of the right to counsel given in a discussion initiated by the police is presumed invalid. Woolley, 178 Ill. 2d at 198.

In applying the rigid, prophylactic Edwards rule, the court must first determine whether the defendant invoked his right to counsel. Smith v. Illinois, 469 U.S. 91, 95, 83 L. Ed. 2d 488, 493, 105

S. Ct. 490, 493 (1984). Whether a defendant has invoked his right to counsel is an objective inquiry. Davis v. United States, 512 U.S. 452, 459, 129 L. Ed. 2d 362, 371, 114 S. Ct. 2350, 2355 (1994). Invocation of the right to counsel minimally requires a statement that can reasonably be construed to be an expression of a desire for the assistance of counsel. Davis, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355. If a defendant makes a reference to an attorney that is ambiguous or equivocal such that a reasonable officer in light of the circumstances "would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." (Emphasis in original.) Davis, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355. The defendant need not articulate his desire in the manner of a Harvard linguist, but he must articulate his desire in a clear enough manner that a reasonable officer in the circumstances would understand the statement to be a request for an attorney. Davis, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355. The Illinois Supreme Court has affirmatively adopted the Davis objective inquiry as the threshold analysis in determining whether a defendant has invoked his right to counsel. In re Christopher K., 217 Ill. 2d 348, 380 (2005).

We first reject the State's argument that defendant's request to call his attorney was not made during interrogation or when interrogation was imminent. Defendant at all times during his hospital stay was guarded by an Addison police officer and was unable to leave. Although he was not being interrogated at the time of his request, it is clear on the audio recording of the initial interview that the officers were going to speak with defendant again, as they asked for his cooperation with future questioning. Defendant had no indication as to when the officers would return. He could not control when the officers would walk into his hospital room again. Furthermore, the officers did in fact return less than 24 hours later.

The parties do not cite and we do not find any Illinois case with facts that are comparable to the facts of the case at bar; so, we consider various foreign cases. We find distinguishable the cases cited by the State in support of its position that defendant could not invoke his right to counsel between the first and second interviews. First, the State discusses McNeil v. Wisconsin, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991). We do not find McNeil particularly relevant. In McNeil, the defendant invoked his sixth amendment right to counsel at his bail hearing for an armed robbery offense. McNeil, 501 U.S. at 173-74, 115 L. Ed. 2d at 165, 111 S. Ct. at 2206. Later, investigators questioned the defendant about an unrelated murder after providing the defendant with his Miranda warnings. McNeil, 501 U.S. at 173-74, 115 L. Ed. 2d at 165, 111 S. Ct. at 2206. The Supreme Court discussed that the sixth amendment right to counsel is offense specific and cannot be invoked for all future prosecutions; the fifth amendment right to counsel pertains to custodial interrogations about any matter. McNeil, 501 U.S. at 175-77, 115 L. Ed. 2d at 166-68, 111 S. Ct. at 2207-08. "The purpose of the Sixth Amendment counsel guarantee--and hence the purpose of invoking it--is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, after 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." (Emphasis in original.) McNeil, 501 U.S. at 177-78, 115 L. Ed. 2d at 168, 111 S. Ct. at 2209, quoting United States v. Gouveia, 467 U.S. 180, 189, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298 (1984). The purpose of the Miranda-Edwards guarantee, the Court explained, is to protect the defendant's interest in dealing with the police only through counsel. McNeil, 501 U.S. at 177-78, 115 L. Ed. 2d at 168, 111 S. Ct. at 2209. Thus, the Court held that invoking one's sixth amendment right to counsel for assistance during prosecutorial proceedings does

-14-

not impliedly invoke one's fifth amendment right to counsel during interrogations about any matter. McNeil, 501 U.S. at 179-80, 115 L. Ed. 2d at 169-70, 111 S. Ct. at 2209-10.

The case at bar is not factually similar to McNeil, as defendant in no way implicated his sixth amendment right to counsel before he was charged by complaint on March 7, 2006. The fact that defendant did not specifically state why he wanted to contact his attorney does not somehow implicate defendant's sixth amendment right to counsel for prosecutorial proceedings that had not yet begun. Under the circumstances in this case, defendant's desire to speak with counsel could have related only to the imminent interrogations that he was facing.

The State next jumps from McNeil to several other cases that it argues imply that, because there was a break in direct interrogation, defendant's invocation of his right to counsel was ineffective. The break in interrogation does not invalidate the effect of the Edwards rule, because it is obvious to this court (and the trial court) that defendant was still in custody and under imminent threat of further interrogation. The additional cases that the State cites to support this argument are factually distinguishable and are nonbinding on this court. See United States v. Grimes, 142 F.3d 1342, 1348-50 (11th Cir. 1998) (the defendant's "claim of rights" form on one charge did not invoke his right to counsel for purposes of an interview a month later relating to different charges; further, the interviews were not custodial interrogations); United States v. Lagrone, 43 F.3d 332, 336-37 (7th Cir. 1994) (the defendant did not request an attorney during custodial interrogation but rather when asked to sign a consent-to-search form; the consent form was not an interrogation and the defendant's request to consult his attorney before signing was a right provided by Indiana law; thus, his invocation of that statutory right was not an invocation of his Miranda right to counsel); Alston v. Redman, 34 F.3d 1237, 1245 (3d Cir. 1994) (the defendant was not being interrogated or facing imminent

interrogation where the defendant invoked his right to counsel while speaking with a representative from the public defender's office and was not reinterrogated until three days later); People v. Nguyen, 132 Cal. App. 4th 350, 357-58, 33 Cal. Rptr. 3d 390, 394-95 (2005) (the defendant was not being interrogated or facing imminent questioning during arrest for possession of drugs when the defendant tried to call her lawyer before being handcuffed and when it was reasonable to conclude that the defendant may have wanted to call to arrange bail); Costley v. State, 175 Md. App. 90, 110-11, 926 A.2d 769, 780-81 (2007) (questionable analysis where Maryland court determined only that the defendant did not invoke the right to counsel during interrogation; the court failed to discuss whether the defendant was facing imminent interrogation); State v. Relford, 9 Neb. App. 985, 992-93, 623 N.W.2d 343, 348-49 (2001) (court did not believe the defendant was facing imminent interrogation where the defendant gave a statement to police on August 15, was placed in jail, stated he needed a public defender on August 16 but declined to call one when offered, and was interrogated again on August 17); Russell v. Texas, 215 S.W.3d 531, 534-36 (Tex. App. 2007) (the defendant's reference to calling his attorney was in response to the police officer's request for consent to search, not interrogation).

More persuasive are defendant's cases that support his argument that the interruption between the first and second interviews did not affect the protections afforded to him under Edwards. In United States v. Kelsey, 951 F.2d 1196, 1198-99 (10th Cir. 1991), the defendant asked to see his lawyer after he was arrested and police were searching his home. The police told the defendant that if he wanted his lawyer now, they could not ask him questions and would have to take him to jail. The police did not ask the defendant questions and did not read him his Miranda warnings until much later, and the defendant answered questions. Kelsey, 951 F.2d at 1198. Although the defendant

invoked his right to counsel before he was questioned or given his Miranda warnings, the appellate court determined that the Edwards rule was triggered because it was clear that the police intended to question the defendant at some point and that the police understood the defendant was invoking his right to have counsel present during questioning. Kelsey, 951 F.2d at 1199; see also State v. Torres, 330 N.C. 517, 527, 412 S.E.2d 20, 26 (1992) (where the defendant was placed in custody for several hours before questioning, supreme court held that the defendant could invoke her right to counsel for impending interrogation though she was not actively being questioned at the time); State v. Hambly, 2008 WI 10, ¶42, 307 Wis. 2d 98, ¶42, 745 N.W.2d 48, ¶42 (finding that the defendant effectively invoked his right to counsel where he asked for an attorney at time of his arrest but before interrogation began). Likewise, defendant in this case was under constant police guard, unable to leave, and facing imminent police interrogations. The fact that defendant requested to call counsel after the first interview but before the second interview does not invalidate his invocation of his right to counsel. Defendant was not required to wait for interrogating officers to readminister his Miranda warnings before he could invoke his rights.

Moreover, the United States Supreme Court recently addressed breaks in custodial interrogation in Maryland v. Shatzer, No. 08--680 (U.S. February 24, 2010). In Shatzer, the defendant was incarcerated when police interrogated him for an unrelated sexual abuse claim. The defendant invoked his right to counsel, police stopped the questioning, and the defendant was released back into the general jail population. Two years later, police returned to question the defendant based on new information, and the defendant confessed. Shatzer, slip op. at 2. The Supreme Court explained that once a defendant invokes his right to counsel under Miranda, subsequent requests for interrogation pose a significantly greater risk of coercion. Shatzer, slip op.

at 7. It acknowledged that this risk often arises when a defendant is arrested for a particular crime, is initially interrogated, and up to and including the second interrogation is held in custody, "cut off from his normal life and companions *** where his captors" seem to control his fate. Shatzer, slip op. at 7. The Supreme Court then announced that police must observe the consequences of Edwards until there has been a break in custody of 14 days. Shatzer, slip op. at 11.

With the Supreme Court acknowledging that the potential for coercion exists during custody and lingers for 14 days beyond the actual custodial period, we cannot agree with the State that, merely because defendant was not being directly questioned at the time of his request, he did not invoke his right to counsel under the circumstances. Under the unique facts of this case, defendant was at all times in custody and was specifically asked to be questioned again by the officers. Defendant was not given a time or date of the next interview, was not released from custody, was immobile due to his injuries, and was under constant guard by police. Defendant had asked for his attorney while in custody and facing further police questioning and was denied the ability to contact him. Under these facts, we cannot agree that the potential for coercion did not continue throughout the first interview, throughout the break in questioning, and throughout the subsequent interviews. Therefore, considering the cases cited by defendant and Shatzer's instruction regarding the lingering effect of coercive environments, we agree with defendant that his request for an attorney, while in custody and facing impending interrogation, sufficiently triggered Edwards' protection.

We next reject the State's argument that defendant's request to call his attorney was ambiguous because it was unknown why defendant wished to call his attorney. The State argues that in the absence of a more specific request that an attorney be present during questioning, defendant's request cannot constitute invocation of his right to counsel under Miranda. We agree with defendant

and the trial court that defendant's request to call his attorney was an unambiguous invocation of his right to counsel. Defendant was in custody, had just been interrogated by police less than three hours earlier, and had been told that they would want to further question him later. Defendant did not inquire whether he should call his lawyer or ponder whether he needed counsel; he asked unequivocally to call his lawyer--a request that was unequivocally ignored.

We find People v. Eichwedel, 247 Ill. App. 3d 393 (1993), persuasive. In Eichwedel, the defendant asked if he could call Jeff Williams, his noncriminal attorney. Eichwedel, 247 Ill. App. 3d at 396. Instead of ceasing the questioning, the officer asked the defendant if he knew a criminal attorney, to which the defendant stated that he did not and asked what would happen if he called a criminal attorney. Eichwedel, 247 Ill. App. 3d at 395-96. The officer explained that the defendant would be processed and taken to the Cook County jail and that, if he chose not to call a criminal attorney, he would sign a Miranda waiver form and the interview would continue. Eichwedel, 247 Ill. App. 3d at 396. The appellate court determined that once the defendant asked to call his attorney, the questioning should have ceased because the defendant's request was a sufficient invocation of his right to counsel. Eichwedel, 247 Ill. App. 3d at 397-98. Thus, it reversed the trial court's denial of the defendant's suppression motion. Eichwedel, 247 Ill. App. 3d at 399.

Similarly, the appellate court affirmed a suppression in People v. Howerton, 335 Ill. App. 3d 1023 (2003). In Howerton, the defendant was taken into custody by police and he stated that if he was under arrest, then the police should take him "upstairs" or he wanted a lawyer. Howerton, 335 Ill. App. 3d at 1024. Rather than terminating the interview, the officers continued to badger the defendant, who five more times indicated that he wanted a lawyer, until he answered the questions. Howerton, 335 Ill. App. 3d at 1026. The appellate court determined that the only reasonable

interpretation of defendant's remarks was that he was invoking his right to counsel from the moment he stated that he wanted a lawyer or to be taken "upstairs." Howerton, 335 Ill. App. 3d at 1026-27; see also Smith, 469 U.S. at 93, 83 L. Ed. 2d at 492, 105 S. Ct. at 491 (Supreme Court held that the defendant sufficiently invoked his right to counsel when in response to whether he understood that he had the right to an attorney's presence during questioning, the defendant stated " 'Uh, yeah. I'd like to do that' " (emphasis omitted)).

Like the courts in Eichwedel and Howerton, we find defendant's request to call his attorney an unambiguous invocation of his right to counsel, as defendant's request was not tainted with hesitation or uncertainty. We find defendant's request distinguishable from the requests in the cases cited by the State, which all contain some lack of decisiveness or clarity in the defendants' statements. See Davis, 512 U.S. at 455, 129 L. Ed. 2d at 368, 114 S. Ct. at 2353 (the defendant stated " 'Maybe I should talk to a lawyer' "); In re Christopher K., 217 Ill. 2d at 374 (the minor asked the officer " 'Do I need a lawyer?' "); People v. Oaks, 169 Ill. 2d 409, 452 (1996) (the defendant asked the officer " 'Should I see a lawyer?' "); People v. Evans, 125 Ill. 2d 50, 73 (1988) (the defendant inquired if there was time to get the public defender, the officer replied that he would stop questioning and call one, and defendant stated " 'no, go ahead' "); People v. Krueger, 82 Ill. 2d 305, 311 (1980) (the defendant stated " '[M]aybe I ought to have an attorney' "). Having just interviewed defendant for approximately one hour and knowing future interrogation was imminent, a reasonable officer should have known that defendant was requesting his attorney for assistance at the imminent interrogation.

Under the circumstances unique to this defendant, he was confined to his hospital bed, under constant police guard, hooked up to several intravenous tubes, and physically unable to reach a phone if one were available in his room. The two people who could have assisted defendant in making his

requested phone call were Officer Giertz and the nurse, neither of whom provided any assistance. The precarious situation in which defendant found himself is somewhat analogous to one in which an attorney is appointed or retained to assist a defendant but the police refuse to give him access to the defendant. Like denying an attorney access to a defendant in custody, the police here essentially refused to allow defendant access to a phone to contact his attorney, and by the police's conduct, defendant was led to believe that he could not access his attorney. See People v. McCauley, 163 Ill. 2d 414, 446 (1994) (recognizing that a defendant's rights under Illinois Constitution are violated where the opportunity to consult with counsel is frustrated by the State, considering that our "constitutional and statutory policies *** favor a person having the assistance of counsel during custodial interrogation and contemplate prohibiting interference with that assistance by governmental authorities" (emphasis in original)); People v. Smith, 93 Ill. 2d 179, 189 (1982) (holding that "when police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him").[2]

----

[2]McCauley and Smith contemplated the denial of an attorney's access to a defendant in custody, despite the defendant's failure to invoke the right to counsel, in the context of whether police conduct affected the defendant's waiver of his right to counsel. In this case, defendant did not argue that the police's failure to allow him to contact his attorney, as opposed to his mere invocation of his right to counsel, affected the waiver of his right to counsel he allegedly provided at the beginning of the second interview. Therefore, we do not explore this issue specifically but find the court's rationale persuasive in regard to fundamental fairness.

We also find misplaced the State's reliance on People v. Villalobos, 193 Ill. 2d 229 (2000), People v. Young, 365 Ill. App. 3d 753 (2006), People v. Farrell, 181 Ill. App. 3d 446 (1989), and People v. Sommerville, 193 Ill. App. 3d 161 (1990), for the proposition that defendant's statement was ambiguous. Villalobos is factually dissimilar because it involved the defendant signing a notice-of-representation form at a bond hearing on an unrelated charge. Villalobos, 193 Ill. 2d at 230-31. The supreme court determined that at the bond hearing the defendant was neither being interrogated nor facing imminent interrogation on the unrelated crime. Villalobos, 193 Ill. 2d at 240. In Farrell, the defendant had not sufficiently invoked his sixth amendment right to counsel at his arraignment hearing when he said that he would retain his own counsel but could not name the attorney. Farrell, 181 Ill. App. 3d at 449-50. Here, we are not faced with whether defendant invoked his sixth amendment right to counsel, and if so whether that triggered his fifth amendment right to counsel on another crime, but rather whether his request to call counsel while in custody and facing imminent interrogation invoked his fifth amendment right to counsel.

Young is distinguishable because in that case the defendant claimed his father had invoked his right to counsel for him where his father, who was in custody along with the defendant's brother, told police he was waiting for his attorney. Young, 365 Ill. App. 3d at 759. The father's request for an attorney seemingly applied to his own right to counsel, not to the right of the defendant or his brother, and therefore the defendant had not invoked his right to counsel. Young, 365 Ill. App. 3d at 759-60. Similarly distinguishable is Sommerville. In Sommerville, the defendant purportedly told his girlfriend to call his attorney at the time of his arrest, in the presence of arresting officers. Sommerville, 193 Ill. App. 3d at 168-69. The appellate court determined that the defendant failed to invoke his right to counsel when his alleged statement to call his attorney was not made to police

but rather a third party. Sommerville, 193 Ill. App. 3d at 169-70. Here, defendant's request for an attorney was neither made by a third party nor made to a third party. Defendant's request to call his attorney was unambiguously made by himself, for himself, and to the police officer guarding him in his intensive care hospital room.

The State's argument that defendant's request was unclear because he did not state why he wanted to contact his attorney would require us to ignore the circumstances of defendant's unique situation, which we decline to do. Although we find defendant's request unambiguous, Officer Giertz was certainly allowed to ask clarifying questions if he was confused. In fact, we note that the Davis Court acknowledged that clarifying questions, though not required, will often be good police practice and "will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel." Davis, 512 U.S. at 461, 129 L. Ed. 2d at 373, 114 S. Ct. at 2356. Perhaps if Officer Giertz had asked defendant an additional question or verbally conveyed defendant's request to the interviewing officers to allow them to act on defendant's request, we would not be required to now analyze this issue. However, nothing was asked and nothing was done, and we can consider only defendant's request to use a telephone to call his attorney on February 27, 2006, at 5:45 p.m. and the facts and circumstances contained in the record. Accordingly, we consider defendant's statement an unequivocal and unambiguous invocation of his fifth amendment right to counsel, triggering the protections afforded by Edwards. Thus, we affirm the trial court's decision to suppress defendant's subsequent statements on February 28, 2006, and March 7, 2006.

Because we agree with the trial court that defendant effectively invoked his fifth amendment right to counsel on February 27, 2006, at 5:45 p.m., we need not analyze defendant's subsequent requests on February 28, March 2, and March 3.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

McLAREN and JORGENSEN, JJ., concur.